A. R. OLESON, APPELLANT, V. GUSTAV ALBERS, APPELLEE.

FILED APRIL 17, 1936. No. 29545.

*A. R. Oleson* and *Fred S. Berry,* for appellant.

*Zacek & Nicholson, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

This is an action at law to recover the purchase price of corn owned by the plaintiff and delivered to the defendant by a trucker, who collected the full purchase price from defendant, but did not pay the plaintiff, who is appellant in this court.

The plaintiff filed a petition in the county court alleging that prior to March 12, 1934, defendant agreed to purchase corn belonging to plaintiff at 40 cents a bushel, and, in addition, the defendant was to pay two cents a bushel more for the trucking charges; that under this agreement 843¼ bushels of corn were delivered to and accepted by the defendant on May 12 and 14, 1934, and that the amount due from the defendant to the plaintiff at 40 cents a bushel is $337.30; that no part of the same has been paid, and that said amount is now due, with interest from May 14, 1934. The plaintiff also alleges in his petition that the defendant has paid the trucker the charges of two cents a bushel for delivering the corn, but has failed and refused to pay the plaintiff 40 cents a bushel, as he agreed and promised to pay.

The defendant filed an answer in the county court, denying every allegation in the petition, and alleging that on May 14 the defendant agreed with one George Worrell to purchase corn of him at an agreed price of 42 cents a bushel, delivered at the farm of the defendant; that said Worrell was then and there engaged in the business of buying and selling corn, and was the owner and operator of a motor truck; that Worrell delivered corn to the defendant

in the quantity set out in the plaintiff's petition; that thereupon, without notice or knowledge of any right or ownership of plaintiff in and to said corn, and upon the demand of the trucker, Worrell, the defendant paid Worrell the agreed price of the corn, to wit, $354.15; that he paid $75 of said sum on May 14, and the balance on May 19, 1934. The defendant alleges that Worrell either purchased the corn from the plaintiff and resold it to the defendant, or that he was the agent of the plaintiff in the transaction; and that the plaintiff, by placing him in possession of the corn and by vesting him with the power of sale, is estopped from denying his power to receive and collect the purchase price.

A trial was held in the county court of Wayne county, Nebraska, on July 20, 1934, and the court entered a judgment for the plaintiff and against the defendant in the sum of $341, with interest at 6 per cent. from July 20, 1934, and costs of suit. Thereupon, the defendant appealed to the district court, and the parties, by a written stipulation duly filed, agreed to try the case in the district court upon the same pleadings filed in the county court. A jury was impaneled in the district court, and at the conclusion of the evidence of the plaintiff the defendant moved for an instructed verdict on the ground that the evidence fails to sustain the plaintiff's cause of action. Upon this motion the court ruled as follows: "The motion of the defendant is sustained and the jury so instructed, but the court states that the motion is sustained upon the theory that the petition is a declaration upon an express contract and that the evidence fails to support that cause of action; and the court further states that the evidence thus far does show that the truck driver in this transaction was the agent of neither party." The plaintiff appeals to this court, setting up as the prejudicial error the above ruling of the district judge.

It will be necessary to briefly review the evidence to determine the question submitted to this court. Plaintiff testified that he had known the defendant for 20 years, and that he was engaged in the business of feeding stock; that

he had known George Worrell, who had been engaged in the trucking business, for two years previous to this transaction; that several days prior to this occurrence the trucker came to plaintiff and asked if he had any corn to sell, and said he had a man who wanted to buy corn, and plaintiff said that he would sell 800 or 900 bushels for 40 cents at his place. The trucker said he could then deliver the corn at 42 cents. Worrell said he would get in touch with his man and let plaintiff know. A few days later Worrell again asked him the price of corn, and plaintiff said there had been no change, and Worrell, the trucker, said that he had a man who would take the corn at 40 cents and pay Worrell two cents for delivering it. Plaintiff asked the name of the purchaser, because he did not want the corn delivered to a man who could not pay for it, and Worrell said it was Gus Albers. Worrell then hauled two loads on Saturday and the balance on Monday, making 843 bushels of corn in all. The trucker gave the plaintiff the weights, and plaintiff told Worrell to tell Albers to give plaintiff a check for his corn when it was convenient. A few days later plaintiff wrote a letter to Albers, asking for a check for the corn, and later Albers telephoned and said he had paid the trucker in full for the corn. Plaintiff then drove out to Albers' farm, and Albers said he had paid the trucker, Worrell, for the corn, and supposed it was his, and there was considerable conversation back and forth between plaintiff and defendant. Plaintiff came back to town and found that the trucker, Worrell, had not only left town but had left the country for good, and no one knew where he had gone, and plaintiff ascertained that he had been bankrupt for several years. A witness testified that he heard the conversation when Worrell, the trucker, met the defendant in front of the hotel, and he heard the trucker say to the defendant that he wanted the rest of the money so he could straighten up with Andy, meaning the plaintiff. The corn was weighed at the elevator in Wisner, and when the trucker drove on the scales with the first load he was asked about the corn, and said, "Corn from Oleson to Albers,"

and that is the way it was put on all of the scale tickets. This is a very brief summary of the evidence.

When the court dismisses the action at the close of the plaintiff's case, this court will assume the existence of every material fact which the evidence of the plaintiff tends to establish, together with all proper inferences therefrom. *Kimble v. Roeder,* 115 Neb. 589, 214 N. W. 1; *Zielinski v. Dolan,* 127 Neb. 153, 254 N. W. 695.

The burden was, of course, upon the plaintiff to establish the essential elements of his cause of action, and plaintiff attempted to establish that Worrell was the agent of the defendant by testifying to statements that Worrell had made to him. If the plaintiff had been able to produce the trucker, Worrell, on the witness-stand, such witness could have testified to facts and circumstances which might possibly have proved that he was the agent of the defendant, but the plaintiff's evidence lacks much of establishing that the trucker was the agent of the defendant, empowered by the defendant to purchase the corn of the plaintiff for the defendant. It may be admitted, as plaintiff claims, that the plaintiff did not seek out the trucker to sell his corn for him, but this does not make the trucker the agent of the defendant.

It is stated as the general rule, in the notes in 8 A. L. R. 203, that an agent authorized to sell commodities has no implied authority to receive or collect payment therefor (*Ketelman v. Chicago Brush Co.,* 65 Neb. 429, 91 N. W. 282), but this rule is subject to several well-recognized exceptions. It is established by a long line of authorities that an agent, having possession of commodities which he is authorized to sell, has implied authority to receive or collect payment therefor. One of the earliest cases establishing this rule is that of *Pickering v. Busk* (1812) 15 East 38, 104 Eng. Rep. 758, wherein a broker sold hemp stored in a warehouse in his name for the benefit of an undisclosed principal, and it was held that a payment made to such broker bound the principal, although the agent proved unfaithful and did not account therefor to his employer.

In 1 Restatement, Law of Agency, 25, sec. 8 reads as follows: "Apparent authority is the power of an apparent agent to affect the legal relations of an apparent principal with respect to a third person by acts done in accordance with such principal's manifestations of consent to such third person that such agent shall act as his agent." See *Harrison Nat. Bank v. Williams,* 2 Neb. (Unof.) 400, 89 N. W. 245.

"Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to collect sums due to the principal, the debtor will be protected in case he relies upon the appearances of authority. It is undeniable that an agent to whom merchandise has been entrusted with authority to sell and deliver it is authorized to receive the price." 21 R. C. L. 867, sec. 42. This has been stated in another form by this court: "Ostensible authority to act as agent may be inferred if the party to be charged as principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to trust and act upon such apparent agency." *Holt v. Schneider,* 57 Neb. 523, 77 N. W. 1086. See, also, *Thomson v. Shelton,* 49 Neb. 644, 68 N. W. 1055; *Bliss v. Falke,* 125 Neb. 400, 250 N. W. 250.

In the case at bar the plaintiff gave the trucker possession of the corn knowing that it was being sold and delivered by the trucker to the defendant. Plaintiff made no inquiry of the defendant as to what the transaction was, although both parties had telephones on the same system. It was clearly the plaintiff who placed Worrell, the trucker, in a position such that an innocent purchaser of this corn had a right to assume that the trucker was authorized to sell and collect the purchase price of the corn, and while it is unfortunate that the plaintiff was deceived in the confidence that he placed in the trucker, yet the law has many times been laid down: "Whenever one of two innocent persons must suffer by the acts of a third, he who has

enabled such third person to occasion the loss must sustain it." Broom's Legal Maxims (9th ed.) 463.

We find this statement in a very early decision: "Where the owner of property (a span of mules) is induced by the fraud of another to part with it, an innocent purchaser from the party in possession will take a good title." *Homan v. Laboo,* 2 Neb. 291.

We have carefully examined the record and, finding no prejudicial error therein, the judgment is hereby

AFFIRMED.