Robert A. LUXENBURG, d.b.a. R. A. Luxenburg Construction Company, Appellant,

v.

CAN–TEX INDUSTRIES, Respondent,

Howard A. Kuusisto, d.b.a. Howard A. Kuusisto Consulting Engineers, Respondent.

No. 46867.

Supreme Court of Minnesota.

Aug. 19, 1977.

Thomson, Lovett, Wahlfors & Moran, and James L. Wahlfors, Bloomington, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Thomas L. Adams and J. Richard Bland, Minneapolis, for Kuusisto.

Murnane, Murnane, Conlin & White, and Robert W. Murnane, St. Paul, for Can-Tex.

Heard before ROGOSHESKE, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff, Robert A. Luxenburg, d.b.a. R. A. Luxenburg Construction Company, appeals from dismissal of his complaint and entry of judgment in favor of defendants Can-Tex Industries and Howard A. Kuusisto, d.b.a. Howard A. Kuusisto Consulting Engineers. The trial court dismissed plaintiff's action on the grounds that a settlement agreement between plaintiff and a

third defendant, the village of Maplewood, precluded any further action by plaintiff against the other two defendants. We reverse.

This case arises out of a contract between plaintiff and the village of Maplewood for construction of a sanitary sewer line in Maplewood. The contract, which plaintiff describes as a "unit price contract," was in the face amount of $105,343. Defendant Kuusisto, retained by the village as consulting engineer, drew up the plans and specifications for the sewer. The plans called for the use of clay pipe which plaintiff purchased from defendant Can-Tex.

During the course of construction, a problem developed with excess ground water infiltration which plaintiff contends was due to no fault of his own. According to plaintiff, he completed initial construction of the line and undertook to correct the infiltration problem, thereby incurring expenses not contemplated by the contract. The village hired a second contractor to do additional repair work. According to the village, plaintiff defaulted on his contract, forcing the village to hire a second contractor to finish the job.

Plaintiff stated five causes of action in its amended complaint, demanding judgment "jointly and severally" against defendants Can-Tex, Kuusisto, and the village in the amount of $256,600. Each cause of action in its title is directed against "the defendants"; however, each cause of action in content is directed against a single defendant. First, plaintiff alleges that the clay pipe supplied by Can-Tex failed to conform to warranties, causing plaintiff damages of $181,600 for repair expenses, loss of profits during a delay in construction, and injury to reputation. Plaintiff further claims damages of $75,000 for its potential liability to the village for repair expenses incurred by the village. Second, plaintiff alleges that Kuusisto negligently required clay pipe in the construction of the sewer line, causing plaintiff damages, apparently the same as enumerated above, in the total sum of $256,600. Third, plaintiff alleges that the village is vicariously liable for damages of $181,600 caused by the negligence of Kuusisto. Fourth, plaintiff seeks compensation from the village for extras under the contract totaling $14,408. Fifth, plaintiff alleges that Kuusisto was negligent in his supervision of the construction, causing plaintiff damages of $256,600. In reply to the village's counterclaim for repair expenses, plaintiff sought an additional $27,276.31 allegedly due under the contract.

On the morning set for trial to commence, counsel for the village read into the record a settlement agreement entered into between plaintiff and the village. The two parties stipulated that the expenses incurred by the village to cure plaintiff's default totaled $59,353.54. Against these expenses, they offset plaintiff's claims for extras and the unpaid balance under the contract which totaled $46,390. The two parties agreed to enter judgment against plaintiff for the difference of $12,963.54 and to dismiss with prejudice all claims by plaintiff or the village against the other. After the agreement was read, Can-Tex moved for a dismissal "on the grounds that the settlement of the plaintiff's cause of action constitutes a release and discharge of the Defendant Can-Tex." Kuusisto joined in the motion.

The trial court took the motions under advisement. Several weeks later, plaintiff and the village filed a written stipulation for dismissal which provides that all claims of plaintiff against the village have been fully settled and compromised and that all claims, including the claim for the vicarious liability of the village for the negligence of Kuusisto, are dismissed with prejudice. The agreement further provides that plaintiff has received no compensation for the other counts contained in its complaint and that plaintiff specifically reserves the right to proceed against the remaining defendants. The same day as the written stipulation was filed, the court entered its order dismissing the complaint against Kuusisto and Can-Tex.

■ Can-Tex and Kuusisto argued to the trial court that the actions against them should be dismissed under the rule that the

release of one joint tortfeasor releases the others. The rationale underlying this rule is the equitable principle that one should not be doubly compensated for an injury. Although under the allegations of plaintiff's complaint the village is not a joint tortfeasor with respect to Can-Tex and Kuusisto, the principle is equally applicable to concurrent tortfeasors, which may be a more accurate characterization of their relationships. See Prosser, Torts (4 ed.), § 48.

In early cases such as *Smith v. Mann*, 184 Minn. 485, 239 N.W. 223 (1931), we gave effect to this equitable principle by use of a rule, the application of which did not ensure equitable results. An instrument styled as a release was held to discharge the entire cause of action, whether or not the parties to the release intended it to have that effect and whether or not the releasing party received full compensation. In *Smith v. Mann*, 184 Minn. 485, 488, 239 N.W. 223, 224, we stated: "The decisive thing now is not whether plaintiff actually released this defendant, or intended to do so, or got full compensation, but rather and only whether she has discharged her whole cause of action." The disadvantages of such a rule are obvious. We discussed them in *Couillard v. Charles T. Miller Hospital, Inc.*, 253 Minn. 418, 424, 92 N.W.2d 96, 100 (1958):

"It may be conceded that the holdings in *Benesh v. Garvais, supra*, [221 Minn. 1, 20 N.W.2d 532] and *Smith v. Mann, supra*, provide a certain facility in ending disputes in this area. But when we peremptorily say that a release ends the matter, we must face the objection that in doing so we are making a decision without taking the trouble to examine the particular facts and circumstances involved. This arbitrary approach to a consideration of the effect of a release goes beyond any reasonable necessity to honor the principle of law that a litigant should not recover twice for the same injury. Moreover, these holdings offend the basic principle of law that an injured party should be wholly compensated for his in-

juries where liability exists. We think, accordingly, that the holdings in *Benesh v. Garvais, supra*, and *Smith v. Mann, supra*, should be reexamined in the light of other decisions of this court which emphasize that the intent of the parties to a release must be considered and that the express language of a release is not alone controlling."

In *Couillard*, which involved "subsequent" tortfeasors, we overruled *Smith* to the extent that it did not permit "parol proof that a party to a release never was compensated for and never intended to release claims based on injuries caused by a subsequent tortfeasor for which the releasee" could also be held liable. 253 Minn. 418, 428, 92 N.W.2d 96, 103. We also expressed agreement with the rule previously adopted in *Gronquist v. Olson*, 242 Minn. 119, 126, 64 N.W.2d 159, 164 (1954), a case involving joint tortfeasors, where we said:

"* * * The just and true rule should be, and we believe is, that, if the injured party has accepted satisfaction in full for the injury suffered by him, the law will not permit him to recover again for the same injury; but if he has not received full satisfaction, or that which the law considers such,[1] he is not barred until he has received full satisfaction. If he receives a part of the damages from one of the wrongdoers, the receipt thereof not being understood to be in full satisfaction of the injury, he does not thereby discharge the others from liability. We apply that rule to the instant case.

* * * * * *

"We believe that the factors determinative of whether a release of one of several joint tortfeasors will operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury. If we apply that rule, then, where one joint tortfeasor is released, *regardless of what form that release may*

---

1. An amount less than the actual or alleged damages may represent "full compensation" where the lesser amount reflects a discount due to the fact that liability is disputed.

*take*, as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction."

That rule is applicable in this case. Can-Tex and Kuusisto, in their briefs and arguments, however, invited the trial court to apply the rule which we have rejected. Kuusisto went so far as to argue that "the question whether the plaintiff has been fully compensated for his injury is rendered moot by the settlement; by definition the plaintiff has agreed to accept the settlement as full compensation for his injury." Because the trial court made no findings of fact and wrote no memorandum in support of its order, we do not know whether it accepted defendants' invitation.

■ It is clear from the discussion contemporaneous with the reading of the settlement agreement into the record that plaintiff did not intend to release his claim against Can-Tex and Kuusisto for repair expenses incurred in correcting the infiltration problem and the loss of profits and injury to reputation incident to that work. The issue of full compensation is not so readily resolved on the record before us. Defendants argue that some of the "extras" credited to plaintiff under the settlement agreement, and part of the full contract price credited to him despite the fact that he did not fully perform the contract, represent payment for repair expenses. To the extent this is true, the amount paid him for repair expenses should be deducted from the amount he seeks to recover from Can-Tex and Kuusisto.

Kuusisto argues alternatively that because it is the employee of the village, which would be liable for its negligence under principles of respondeat superior, plaintiff's settlement with the village releases Kuusisto. The nature of the relationship between Kuusisto and the village and whether plaintiff has an independent cause of action against Kuusisto are issues to be litigated and resolved at trial.

Reversed.