**SIMONDS–SHIELDS–THEIS GRAIN COMPANY, Plaintiff,**

v.

**FAR–MAR–CO., INC., Defendant.**

**No. 82–1039–CV–W–6.**

United States District Court,
W.D. Missouri, W.D.

Dec. 9, 1983.

Leonard J. Johnson, and Brent Erwood, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for plaintiff.

Lee Smithyman, Weeks, Thomas & Lysaught, Chartered, Overland Park, Kan., and Richard L. Hathaway, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT

SACHS, District Judge.

Plaintiff (SST) is the owner of thirteen grain elevators, referred to as country elevators, which buy soybeans and other products from local farmers. One of the country elevators, Falls City Grain Company, is located in Falls City, Nebraska. Defendant (Far-Mar-Co) operates a larger receiving elevator in St. Joseph, Missouri, which buys soybeans and then supplies them to an affiliate, Farmland Soy Processing. This case involves a soybean sales contract between SST as seller and Far-Mar-Co as buyer. SST supplied the "beans," through an independent trucker, William McColery, but was not paid by defendant because McColery represented orally and in writing at defendant's scale-house that the soybeans were his, and he received the payment.

Plaintiff contends defendant was negligent in paying McColery, failed to inquire beyond his say-so as to ownership of the soybeans, and thereby converted plaintiff's soybeans and breached the sales agreement. Defendant contends plaintiff should bear the loss because (1) it chose McColery to transport and deliver the soybeans, (2) it entrusted the beans to a trucker who was also a merchant and who was thereby empowered by law to transfer ownership, and (3) it released defendant from all claims and elected to pursue McColery.

The Court heard this jury-waived case on November 21 and 22, 1983 and thereafter received briefs. The following memorandum is filed pursuant to Rule 52(a), Fed.R.

Civ.P. The Court rules for defendant although it concludes the release was ineffective. It is concluded that McColery was empowered to transfer ownership of the soybeans to Far-Mar-Co, pursuant to Sec. 2–403(1) and (2) of the Uniform Commercial Code and common law agency principles consistent with the Code.

### (1) Release Ineffective

■ The parties have briefed and exhaustively litigated the release issue. The document relied on, dated July 23, 1982, cannot serve as a release because, although it was signed by the manager of the Falls City elevator, Gary Liberty, it was not countersigned as required by the president of SST, Frank Baumgartner. Mr. Baumgartner's signature was clearly necessary to make the release effective. Far-Mar-Co's attorney prepared the release for two signatures and did not obtain them.

■ A somewhat closer question is presented by the argument that there was an oral release or perhaps that SST is estopped to deny the release. It appears, however, that Mr. Baumgartner was not clearly advised what was contemplated in demanding a "release" in exchange for documents evidencing the McColery transaction. He reasonably understood, though somewhat vaguely, that Far-Mar-Co wanted protection for having disclosed McColery's shenanigans. There is also indication, through Far-Mar-Co personnel, that Mr. Liberty was asked to sign the partially executed release in exchange for photocopies of the checks and "scale tickets" and that the original documents were to be supplied when the release was fully executed. If that was the understanding, as a letter to Mr. Baumgartner indicates, there was simply an unconsummated agreement. Mr. Baumgartner did not choose to pay the price demanded for the original documents.

Far-Mar-Co did assist SST with information allowing it to pursue McColery for repayment of funds which he said he had obtained "erroneously." McColery signed a note payable to SST. No payment has been received from McColery and SST has not sued him. These events did not, in the opinion of the Court, estop SST from seeking relief from Far-Mar-Co, or result in a binding election.

### (2) Entrustment with a Merchant

■ Far-Mar-Co vigorously contends that SST is barred from recovery because it "entrusted" possession of its grain to "a merchant who deals in goods of that kind," which thereby gave McColery "power to transfer all rights of the entruster to a buyer in the ordinary course of business." Sec. 400.2–403(2), RSMo. Similar UCC language has been enacted in Nebraska, where the entrusting occurred. SST contends McColery was simply a trucker, not a merchant. Liberty knew, however, that McColery had a reputation as a sometime "merchant," in that he occasionally bought and sold grain in the Falls City area. Far-Mar-Co had previously dealt with McColery as both a trucker of grain belonging to others and as a seller of grain purportedly belonging to himself. While there was no direct proof that farmers had sold grain to McColery, and his representation to Far-Mar-Co that he was the owner must be treated as somewhat suspect in light of his misrepresentation in this case, gross criminal misconduct involving many victims will not be inferred. McColery appears to have been well known in the Falls City area and no charges have apparently been brought against him. The Court will accept the inference that McColery was, in June 1982, an occasional grain merchant and was so known to SST.

Occasional merchandising, known to the entruster, presumably satisfies the requirements of the UCC. McColery was thus "empowered" by statute to transfer SST's rights to Far-Mar-Co in the "ordinary course of business." The evidence shows such a routine purchase, and Far-Mar-Co is thus entitled to prevail.

The Court notes, as a possible contrary authority, the Fifth Circuit decision in *Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117 (5th Cir.1973). That per curiam decision summarily affirms a district court decision favoring the original

owner of a boat who rented a stall from a marina operator who had a "separate" business as a boat merchant and repairer. While this Court is not fully persuaded by the *Gallagher* decision, it does appear to be distinguishable. McColery's activities cannot fairly be called "separate businesses." Some degree of physical separation or isolation was apparently a factor in *Gallagher*, but not here. It is true that SST did not invite McColery to deal with it as a merchant, on his own account, in this case, but the UCC does not require full-time merchandising; such a reading of the UCC would be inconsistent with defeating the owner's title when he entrusts assets for another purpose. By definition, the transferor is not acting as a merchant in accepting the product. Entrusting to a part-time merchant triggers the Code protection of a buyer, and such an event occurred here. Compare *Tumber v. Automation Design & Mfg. Corp.*, 130 N.J.Super. 5, 324 A.2d 602 (1974) (although transaction was isolated, owner was estopped under common law to assert his title).

### (3) Trucker as Authorized Selling Agent

■ In the alternative, defendant should prevail as a matter of law under the uncontested facts in this case because Far-Mar-Co's "transferor" was a person who "had power to transfer." The rights of the original owner were thereby extinguished. Sec. 400.2–403(1), RSMo. Section 2–403(1) of the Uniform Commercial Code has been enacted in Nebraska, where the agency was created and McColery obtained his authority to transfer the soybeans.

The Eighth Circuit has noted that the precise rule of law here applicable has been settled in Nebraska for some years. *Rath Packing Company v. Paul Blood Farms, Inc.*, 419 F.2d 13, 18 (8th Cir.1969). Judge Bright observed that under Nebraska law "a farmer who entrusted a trucker with produce could not recover the purchase price from a purchaser who had already paid the trucker for the produce." The decision invoked the principle that the person who enables a third party "to occasion the loss must sustain it." *Oleson v. Albers*, 130 Neb. 823, 266 N.W. 632, 635 (1936). As in *Oleson*, "it is unfortunate that the plaintiff was deceived in the confidence that [it] placed in the trucker," but the party who was initially "taken in" by a trucker who is disloyal to his principal cannot shift the loss to a subsequent party who was likewise misled.[1]

Section 2–403(1) of the UCC is not as clearly written as might be possible. It combines several categories of persons, including persons whose ownership rights are "voidable" and those who are simply agents. The agency category is somewhat buried in the statutory verbage but does appear in the alternative. A Fifth Circuit decision notes that "the phrase 'or had power to transfer' in section 2–403(1) makes clear that common-law concepts of agency and estoppel (based on actual or apparent authority) may be invoked by a party who purchases goods from an agent or apparent agent of the true owner." *American Standard Credit, Inc. v. National Cement Co.*, 643 F.2d 248, 266 (5th Cir.1981). In this case McColery had actual agency authority, and therefore the power to transfer, although his agency status was not disclosed.[2]

---

1. The Court does not find it necessary to weigh the negligence of the parties. No case-law is suggested that would require the Court to make such comparisons. It is quite possible that SST had more favorable experience with McColery and thus more reason to trust him than Far-Mar-Co did, although it is interesting that there is no witness who remembers that produce haulers in general have ever heretofore attempted to mislead Far-Mar-Co as to the ownership of their product. There is some indication that recent economic conditions have sometimes caused owners to conceal the existence of liens, but different rules of law apply to liens, and in any event there was a lien check (on McColery) by telephone in this case. The Court does not, of course, endorse as sound the industry practices described in the evidence, but is satisfied that the UCC and authoritative cases mandate the result.

2. The Court's reading of the Utah case cited by SST (*Manger v. Davis*, 619 P.2d 687, 688, (Utah 1980)) suggests that the Utah Court missed the alternative provision of section 2–403(1), discussed in *American Standard Credit*, and therefore dealt with issues of void and voidable title, not pertinent to this decision or perhaps to

Plaintiff SST makes an argument that Missouri rather than Nebraska law applies, and that the *Oleson* decision is inconsistent with Missouri law. Assuming arguendo that Missouri law does apply, both states have enacted the UCC, and the language of the UCC as well as *Oleson* favors Far-Mar-Co. Moreover, the *Oleson* decision is representative of other common law decisions. "One of the most common ways by which a principal may clothe his agent with the indicia of authority to receive payment is by entrusting him with possession of the goods to be sold, so that the purchaser may rightfully assume his authority to collect the purchase money." 3 Am.Jur.2d 505, "Agency" 106.

The only case cited by SST as being contrary to *Oleson* has dicta that is distinguishable. *Schrader v. Westport Avenue Bank*, 236 Mo.App. 362, 156 S.W.2d 753, 757 (1941). *Schrader* rejected the claim of the original owner of bonds, when her bonds were transferred by a disloyal agent. The court cited dicta, however, that one who has the property of another " 'in his possession for transportation or for mending or repairing it' " cannot pass good title. This would also generally be true, for example, when a farm hand in possession has not been directed to sell or transfer property. *Blackwell v. Laird*, 236 Mo.App. 1217, 163 S.W.2d 91 (1942). See also *Porter v. Wertz*, 68 A.D.2d 141, 416 N.Y.S.2d 254 (1979) (prospective buyer in possession). Assuming that possession in many contexts does not create a power of transfer, a mere carrier has less authority than a person who has been directed to transport goods and also make final delivery to a purchaser in consummation of a sale, thereby extinguishing the interest of the shipper. In the latter case, as in *Oleson*, the carrier does have the "power to transfer" and the UCC places the loss on the shipper. Pre-Code Missouri law is not to the contrary.

*Manger.* In any event, *Manger* rests on other provisions of the UCC, relating to security interests. The concurring opinion in *Manger*, moreover, relies on points distinguishing that case from the one at bar.

The ruling against plaintiff SST illustrates the Missouri rule that when "an owner, by his voluntary act, confers upon another the apparent right of . . . disposal of his property, that person, even though guilty of fraud and deceit, may pass good title to a good faith purchaser." *J.C. Equipment, Inc. v. Sky Aviation, Inc.*, 498 S.W.2d 73, 78–9 (Mo.App.1973).[3] Whether McColery be considered a "merchant" or simply an agent authorized to consummate a sale, SST has no basis for requiring Far-Mar-Co to pay twice for soybeans which SST entrusted to McColery.

It is therefore ORDERED that judgment be entered in favor of defendant, at plaintiff's cost.

---

**3.** The Court has no reason to doubt Far-Mar-Co's status as a "good faith purchaser," whatever may be said about the degree of care exercised by it and other members of the industry who routinely rely on the ownership claims of truck drivers delivering produce.