**Duane BIXLER, by his father and natural guardian, Herbert D. BIXLER and Herbert D. Bixler, individually, Appellants,**

**v.**

**J.C. PENNEY CO., INC., et al., Defendants,**

**Avondale Mills Corporation, Respondent,**

**Cone Mills Corporation, Respondent,**

**Riegel Textile Corporation, Respondent,**

**Cohn-Hall-Marx, etc., et al., Respondents.**

**Nos. C1–83–345, C6–83–342, CX–83–344 and C8–83–343.**

Supreme Court of Minnesota.

Nov. 1, 1985.

Richard J. Baldwin, John F. Cook, St. Paul, for appellant.

Heidi M. Hoard, Faegre S. Benson, Minneapolis, for Cone Mills Corp.

Donald M. Jardine, St. Paul, for Avondale Mills Corp.

James Simonson, Minneapolis, for Riegel Textile Corp.

Gene P. Bradt, St. Paul, for Cohn-Hall-Marx.

## OPINION

WAHL, Justice.

Herbert Bixler, in his own behalf and for his son, Duane Bixler (Bixlers) sued J.C. Penney Co. (Penney) for damages for severe burn injuries suffered by Duane when the nightshirt he was wearing, made of cotton flannelette retailed by Penney, was accidentally ignited. M. Lowenstein Corporation (Lowenstein), a major supplier of Penney flannelette, was added as an additional defendant and third party defendant. The Bixlers' motion to further amend their complaint to name four other flannelette manufacturers and Penney suppliers— Avondale Mills Corporation (Avondale), Cone Mills Corporation (Cone Mills), Riegel Textile Corporation (Riegel) and Cohn-Hall-Marx—as defendants and to add a count alleging market share liability was denied by order of the Hennepin County District Court (Sedgwick Order) dated July 27, 1982. Appeal no. 82–1415 is an appeal by the Bixlers from that Order. Separate suits commenced October 19, 1982, by the Bixlers against Avondale, Cone Mills, Riegel and Cohn-Hall-Marx resulted in two orders granting summary judgment for the defendant manufacturers (Iverson Orders). Appeals nos. C6–83–342, C8–83–343, CX–83–344 and C1–83–345 are appeals by the Bixlers from those orders. We reverse the orders granting summary judgment.

None of the parties question that Duane Bixler's injuries were severe and traumatic. He endured third degree burns over 50% of his body, including his face, and has been permanently and seriously scarred. He was initially hospitalized for a period of 14 to 22 months, and has been in the hospital for a total of five years between 1969 and 1981. Much of Duane's face and neck have had to be rebuilt due to the burns, and he has allegedly suffered a severe psychological reaction to his own scarring. It has further been alleged that Duane has been rendered wholly unemployable as a result of his injury and emotional impairment, and that medical bills between $200,000 and $300,000 have already been incurred. Although the Bixlers have negotiated settlements and entered into Pierringer releases with Penney and Lowenstein, the identity of the manufacturer of the flannelette has never been established and the question remains as to whether the Bixlers may proceed against the four non-settling manufacturers.

The history of the litigation of this case is a procedural morass which must be traversed in order to reach and understand our disposition. The fabric from which the nightshirt was made was patterned with cowboys on horseback. It was purchased by Duane's grandmother in the fall of 1968 from J.C. Penney Co. The injuries occurred sixteen years ago, on February 4, 1969, when Duane was five years old and his nightshirt, having accidentally come into contact with a cigarette lighter, burst into flames. Eleven years after that incident the Bixlers filed their initial complaint against Penney, alleging products liability,

breach of warranties, and negligence. Through its buyer, Thomas Keating, Penney identified Lowenstein, Avondale, Cone Mills, Riegel and Cohn-Hall-Marx as the five mills from which it had purchased flannelette fabrics during the year 1968. It was Keating's opinion that Lowenstein had manufactured the fabric. He based this opinion on the quality and sharpness of the pattern which he viewed as characteristic of Lowenstein textiles and the volume of fabric Lowenstein supplied to Penney at that time.

Penney impleaded Lowenstein but, as discovery progressed, became less certain that the fabric had been manufactured by Lowenstein. Counsel for the Bixlers and counsel for Penney went to Lowenstein's factory on June 19, 1981, and were shown books of swatches of Lowenstein fabrics. None of the flannelette cloth manufactured prior to 1969 which they saw was identical in design to the patterns shown them of the nightshirt fabric. Keating, when later shown fabric samples of cowboy patterns produced by Lowenstein, acknowledged that there were differences between those patterns and the pattern of the nightshirt fabric. Lowenstein's design librarian, when deposed, stated that these similar patterns were not even engraved until 1969. Penney itself was unable to locate any purchase invoices or other records which might identify the supplier of the fabric.

On March 18, 1982, the Bixlers served Penney and Lowenstein with an amended complaint naming Avondale, Cone Mills, Riegel and Cohn-Hall-Marx as defendants and adding a count in "alternative liability," alleging that:

> In the event that neither plaintiffs nor defendant J.C. Penney Co., Inc. can adequately prove which defendant fabric manufacturer manufactured the cotton flannelette which is the subject matter of this litigation, then each of the defendant fabric manufacturers is liable for a proportionate share of plaintiffs' damages, based upon either their share of cotton flannelette sold to defendant J.C. Penney Co., Inc., or their proportionate share of the cotton flannelette manufactured in the United States.

The Bixlers' attorney served the amended complaint on these four manufacturers during April, 1982, believing that both Penney and Lowenstein had consented to the amendments prior to service. No written consent had been given, however, and Lowenstein did object. Because the time for amendment of the complaint as of right under Rule 15, Minn.R.Civ.P., had expired, the Bixlers moved the Hennepin County District Court for an order allowing the amended complaint. Judge Sedgwick, by order dated July 27, 1982, denied the Bixlers' motion, explaining in an incorporated memorandum that in her view, "alternative" or "market share" liability, a product liability theory not yet adopted in this state, was inappropriate in this case. The court understood "market share liability" to be the sole justification asserted by the plaintiffs for adding the additional manufacturers as deféndants, and, therefore, concluded that the amendments were improper.

On September 7, 1982, the Bixlers, joined by Penney, filed a petition for discretionary review of Judge Sedgwick's order in this court, pursuant to Rule 105, Minn.R.Civ. App.P., and, at the same time, filed a notice of appeal as of right from the same order pursuant to Rule 103, Minn.R.Civ.App.P. The fact that the petition and the appeal both related to the same order passed unnoticed, and in accordance with the court's internal routing procedure at the time, the petition for discretionary review went to the special term panel, the appeal to the prehearing assignment secretary to be set down for a prehearing conference.

The petition for discretionary review came up for disposition first. Lowenstein argued that trial court's order was proper, and that discretionary review was unnecessary since "nothing in the court's order * * could in any way be interpreted as preventing the plaintiffs * * * from commencing a separate lawsuit against all the other manufacturers," except to the extent that the

order prevented assertion of a market share liability theory. By order dated October 4, 1982, this court denied the petition for discretionary review.

On October 19, 1982, the Bixlers then commenced a separate action against each of the four remaining manufacturers, assertedly to avoid the impending December 5, 1982, running of the statute of limitations. The complaints served on the individual defendants did not allege "alternative" liability as a theory of recovery.

The appeal as of right of the Sedgwick order was then scheduled on December 15, 1982, for prehearing conference in this court before Justice Todd. Counsel for Bixlers, Penney and Lowenstein, appeared at the prehearing conference. It was the understanding of these attorneys, as set out in their post-conference stipulation, that Justice Todd had determined that the Supreme Court would retain appellate jurisdiction of the case while at the same time remanding it with directions that the parties stipulate that Judge Sedgwick's order of July 27, 1982, would be vacated and that Judge Sedgwick would then order that the original complaint be amended to add the other four manufacturers as defendants and to delete the "alternative" liability count. Justice Todd's December 15, 1982, order read as follows:

IT IS HEREBY ORDERED:

1. The above-entitled matter is remanded to the District Court, Hennepin County, for further proceedings.

2. The appellate jurisdiction shall be retained by this court and any party shall have a right to refile and reopen to appeal without prejudice to any issues presently before the court.

A proposed order reflecting the agreement the attorneys for the Bixlers, Penney and Lowenstein understood had been reached at the prehearing conference, was signed by them and submitted to Judge Sedgwick. Judge Sedgwick did not sign the order because it was not clear to her from the Todd order what she was to do. She requested "modification or direction" from this court.

In the meantime, each manufacturer defendant in the separate actions begun in October filed a motion for summary judgment in district court. Avondale, Cone Mills, and Cohn-Hall-Marx, in support of their motions, submitted affidavits of the employees in charge of their fabric libraries, stating that the fabric pattern had not been manufactured or sold by them. Cone Mills and Avondale also asserted that Judge Sedgwick's order denying the Bixlers' motion to amend their complaint estopped these new, independent actions. Riegel submitted no supporting affidavits.

By order dated January 5, 1983, Judge Iverson entered summary judgment in favor of Avondale and Riegel. The court found that there was "no indication by plaintiff that any facts exist upon which liability can be imposed on these defendants." The court found further that since the commencement of the original lawsuit, plaintiffs had had adequate time to develop such facts through discovery if such facts exist. Judge Iverson ordered the Bixlers to show cause within 10 days why summary judgment should not also be entered in favor of Cone Mills and Cohn-Hall-Marx.

The Bixlers moved the court to reconsider and withdraw its order of January 5, and to deny the summary judgment motions of Cone Mills and Cohn-Hall-Marx. In support of its motion, the Bixlers submitted a letter by the attorney for Penney indicating the necessity of having the pattern books of a fabric manufacturer inspected at its own pattern book library by opposing counsel. Counsel for the Bixlers asserted on this evidence that the affidavits submitted by the other manufacturers' employees should not be relied on. He submitted no other rebuttal affidavits. By order dated January 14, 1983, Judge Iverson denied the Bixlers' motion and granted summary judgment in favor of Cone Mills and Cohn-Hall-Marx.

The Bixlers again appealed to this court, this time for review of Judge Iverson's orders in each of the individual cases. They moved to have these appeals consolidated with the earlier appeal taken from

Judge Sedgwick's order in the initial action against Penney and Lowenstein. Justice Scott, sitting as the prehearing conference judge, stayed the appeals by order of May 2, 1983, until there was a final judgment in the action against Penney and Lowenstein.

Subsequently Penney, Lowenstein and the Bixlers were ordered, with their consent, by Judge Richard Kantorowicz of the Hennepin County District Court, to take part in a "summary jury trial" as a settlement device. The summary trial was conducted on October 1, 1984, and resulted in two six member advisory juries concluding that Lowenstein had not been the manufacturer of the nightshirt material. Lowenstein subsequently moved for summary judgment, which was denied.

At this point the Bixlers entered into settlements with both Penney and Lowenstein through Pierringer releases. They notified this court that these settlements would result in a judgment of dismissal of their action against these defendants. Based on these representations, Justice Scott ordered the original appeals reinstated by order dated November 30, 1984. Judgment has not to this date been entered in that action.

After these appeals were ordered reinstated, counsel for Cone Mills contacted counsel for the Bixlers requesting a copy of the settlement documents. This request was refused because of asserted "past discourtesies" on the part of counsel for Cone Mills, and because, in the opinion of the Bixler's counsel, the information was "completely irrelevant to the appeals process." Cone Mills then moved this court for an order dismissing the appeals as moot, or, alternatively, for an order compelling the Bixlers to produce a copy of the settlement documents. Avondale Mills and Riegel Textile joined in Cone Mills' motion. We stayed these motions for consideration at the time of submission of the matter on the merits of the appeals. At oral argument this court requested that copies of the set-

tlement documents be sent to the court and to the respondents. Counsel for the Bixlers complied with this request.

## I.

■ The parties on appeal have argued first the effect of Judge Sedgwick's order denying the Bixlers' motion to amend the original complaint by adding the four respondent fabric manufacturers as defendants and by allowing an allegation of market share liability. We are satisfied, as was counsel for the Bixlers at oral argument, that any consideration of the issue of market share liability is premature.[1] It is also clear to us that the parties, as well as the trial courts, were confused by the dual routes of review of the Sedgwick order pursued by counsel for the Bixlers and by the conflicting orders of this court, one order dismissing the petition for discretionary review, the later order preserving all issues for appeal. Because of this confusion and because our disposition of the remaining issues affords a sufficient measure of relief, we find it unnecessary and irrelevant to decide the propriety of the Sedgwick order insofar as it denied the motion to permit addition of the four respondents as defendants. We therefore dismiss appeal no. 82–1415.

## II.

■ We must decide at the outset whether the appeals from the Iverson orders still present a live controversy. Respondents seek to persuade us that they do not. An appeal will be dismissed as presenting a moot question if, pending the appeal, an event occurs which makes a decision unnecessary. *Matter of Inspection of Minnesota Auto Specialties, Inc.,* 346 N.W.2d 657, 658 (Minn.1984); *Sprenger v. Jacobs,* 305 N.W.2d 747, 748 (Minn.1981). Respondents assert that the Bixlers' entering into settlements with Lowenstein and Penney is such an event. They rely on our decision in *Luxenburg v. Can-Tex Industries,* 257

---

1. We express no opinion as to whether we would adopt such a rule, particularly where the product involved is not entirely fungible with similar products on the market. *See Mason v. J.C. Penney,* —— F.Supp. —— (D.Minn.1985).

N.W.2d 804 (Minn.1977), holding that the release of one alleged tortfeasor will release all others if the settlement agreement manifests such an intent, or if the plaintiff received full compensation in law or in fact for damages sought against the remaining tortfeasors. *Id.* at 807–08. Respondents argue that the settlement, which guarantees Duane a minimum of $4,350,050, including a $700,000 up front payment, constitutes full compensation for his injuries and thus extinguishes his claim against the respondents.

■■■■ The rule in *Luxenburg* does not control the resolution of the issue under the facts of this case. The settlement agreement in *Luxenburg* was a general release, which ordinarily discharges a plaintiff's entire cause of action. The settlements here, however, involve Pierringer releases. Unlike general releases, Pierringer releases do not extinguish potential claims against remaining alleged tortfeasors. *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978); *see generally* Simonett, *Release of Joint Tortfeasors: Use of The Pierringer Release in Minnesota*, 3 Wm. Mitchell L. Rev. 1 (1977). Moreover, the amount paid out to a settling party under such a release is irrelevant to the survival of the remaining claims. *See Shantz v. Richview, Inc.*, 311 N.W.2d 155, 156 (Minn. 1980)(relying on *Anunti v. Payette*, 268 N.W.2d 52, 56 (Minn.1978)). Since the Bixlers' settlements do not affect their claims against the respondents, we hold that the appeals from the orders granting summary judgment to the respondents continue to present live controversies and are not moot.

■■■■ We note that the refusal of the Bixlers' counsel to furnish copies of the settlement documents to the respondents when requested by them to do so has resulted in the unnecessary expenditure of legal resources. Had the respondents been able to ascertain for themselves the legal effects of those documents they would likely have found it unnecessary to brief and argue the mootness issue and would certainly not have moved this court for production of the documents. For this reason we order that no costs be allowed.

### III.

The last, and dispositive, issue before us is whether the trial court properly granted summary judgment in favor of each of the four respondents in the separate actions. Summary judgment is not a substitute for trial and may be granted only if, based on the entire record, no issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Rule 56.03, Minn.R.Civ.P.; *Grondahl v. Bullock*, 318 N.W.2d 240, 242 (Minn.1982). The burden is on the moving party to show the absence of any material fact. Rule 56.03, Minn.R. Civ.P.; *Barilla v. Clapshaw*, 306 Minn. 437, 439, 237 N.W.2d 830, 831 (1976). Once the movant has supported the motion, however, the opponent must show that a material issue of fact remains in dispute by presenting specific admissible facts giving rise to a factual question. *Continental Sales and Equipment Co. v. Town of Stuntz*, 257 N.W.2d 546, 550 (Minn.1977). The opponent may not rely upon mere general statements of facts contained in the pleadings or upon surmise and speculation as to what could be presented at trial. *Fownes v. Hubbard Broadcasting, Inc.*, 302 Minn. 471, 474, 225 N.W.2d 534, 536 (1975).

■■■■ It is clear, applying these standards, that respondent Riegel failed to meet its initial burden of proving the absence of any material fact for trial. Riegel did not support its motion for summary judgment by accompanying affidavits or other evidence tending to disprove the allegations contained in the Bixlers' complaint. Since, on a motion for summary judgment the non-moving party has the benefit of any doubts as to the existence of a material fact, *Dalco Corp. v. Dixon*, 338 N.W.2d 437, 441 (Minn.1983), the trial court erred in awarding summary judgment to Riegel based only on Riegel's own unsupported contentions that it did not manufacture the fabric. The trial court's order granting summary

judgment in favor of Riegel is therefore reversed.

Each of the other respondents, however, did submit an affidavit by an employee, who was an expert in fabric patterns, stating that a search of the fabric library of that fabric mill revealed that that mill did not manufacture the cloth used in Duane's nightshirt. The Bixlers opposed these affidavits by seeking to raise doubts as to the credibility of the affiants. They further contended that they had had insufficient time to conduct discovery. We consider each of these asserted grounds for reversal in turn.

■ Doubts as to the credibility of the movant's affiants may lead a court to conclude that a genuine issue of fact exists. *See Illinois Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 634 (Minn.1978); *see also Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Matter of Citizens Loan and Savings Co.*, 621 F.2d 911, 913 (8th Cir.1980); Herr & Haydock, *2A Minnesota Practice* § 56.20 (1985); C. Wright, A. Miller & M. Kane, 10A *Federal Practice and Procedure: Civil 2d* § 2726 (1983). A simple assertion that an affiant's statements may be disbelieved, however, is insufficient to defeat a motion for summary judgment. The opponent of the motion must demonstrate some basis for an attack on the affiant's credibility amounting to a positive showing that the affiant's testimony could be impeached or that he or she might have additional testimony valuable to the opponent. *Lundeen v. Cordner*, 354 F.2d 401, 408 (8th Cir.1966). *See generally* Sonenshein, *State of Mind and Credibility in the Summary Judgment Context: A Better Approach*, 78 N.W.U.L.Rev. 774 (1984).

■ In this case, the Bixlers supported their attack on the credibility of the manufacturers' affiants by a letter written by counsel for Penney to Lowenstein stating that he believed it necessary, based on his experience, to personally visit Lowenstein's textile library to inspect the company's pattern books. Counsel for the Bixlers stated in his affidavit that the letter was "indicative of an experienced attorney's refusal to accept information from a textile mill at face value." This letter does not raise an issue of the credibility of these respondents sufficient to defeat their motion. While the information contained in the letter could perhaps be introduced in an action against Lowenstein to impeach the credibility of that company's witnesses, *see* Minn. R.Evid. 608(a), it is not relevant to the credibility of these respondents and thus could not be introduced to impeach them.

■ Counsel for the Bixlers also opposed the motions for summary judgment by asserting that he had "been allowed no discovery" and that it had therefore been impossible for the Bixlers to use the fabric mills' pattern libraries to aid in identification of the manufacturer. In his affidavit he also stated that he had had no opportunity to test the veracity of the respondents' affidavits. For these reasons, the Bixlers argue that summary judgment was prematurely granted. While the counsel's affidavit does not constitute a formal motion for a continuance, under Rule 56.06, Minn.R. Civ.P., a trial court may grant a continuance to permit further discovery even absent such a formal motion.[2] Continuances should be liberally granted under Rule 56.-06, especially when the party seeking more time is doing so because of insufficient time to conduct discovery. *Rice v. Perl*, 320 N.W.2d 407, 412 (Minn.1982); *accord* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2741 (1983). In deciding whether a continuance should be granted to allow more time for discovery, a court should focus on two issues: first, whether the party seek-

---

**2.** Rule 56.06 provides:
Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present, by affidavit, facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

ing more time is acting from a good faith belief that material facts will be discovered, or is merely engaged in a "fishing expedition," and, second, whether the party has been diligent in seeking discovery prior to bringing the motion. *Rice*, 320 N.W.2d at 412.

There is no question that, in the case before us, the Bixlers are likely to discover material facts by further discovery. In the course of discovery already conducted in the case against Penney and Lowenstein, they have uncovered strong evidence that one of the five manufacturers did produce the fabric used in Duane's nightshirt. Moreover, each of the manufacturers does maintain a fabric library containing swatches of the material it produced during the relevant time period. With additional time to discover the contents of these libraries, there is therefore a strong likelihood that the identity of the manufacturer, a fact plainly material to the outcome of this litigation, will be ascertained. Under these circumstances, the appellants survive the "fishing expedition" inquiry.

The diligence issue presents a closer question. The trial court was of the opinion that the Bixlers had had adequate time to discover relevant facts since the commencement of the original lawsuit, and was not entitled to more time. Viewed in light of the procedural history of these lawsuits, however, the Bixlers' failure to conduct this discovery does not appear unreasonably dilatory. At the time these actions were commenced, appellants were in the process of appealing Judge Sedgwick's order. The initial hearing on the summary judgment motions was held on December 20, 1982, just five days after this court had issued an order which counsel for the Bixlers, Lowenstein and Penney apparently all believed would result in vacation of Judge Sedgwick's order and amendment of the complaint in the suit against Penney and Lowenstein to add these respondents as additional defendants. The second hearing was held on January 14, 1983, a little over three weeks after the initial hearing. In practical effect, in the span of one month, the Bixlers' position changed from reasonably believing that the respondents would be named parties in the original action to having their claims in the individual actions dismissed on the merits. Under these circumstances, the Bixlers were not unreasonably dilatory in failing to seek the necessary discovery. We, therefore, hold that the motions for summary judgment in favor of Cone Mills, Avondale Mills, and Cohn-Hall-Marx were prematurely granted.

The Bixlers should have the opportunity to inspect the fabric patterns for the relevant time period in the fabric libraries of the respondent manufacturers. We reverse the orders of the trial court for summary judgment and remand for additional discovery.

Reversed and remanded.

KELLEY, J., took no part in the consideration of this case.