Robert **SCHLUTER**, et al., Appellants,

v.

**UNITED FARMERS ELEVATOR,**
Respondent.

No. C1–91–1279.

Court of Appeals of Minnesota.

Dec. 24, 1991.

Review Denied Feb. 27, 1992.

the elevator via an independent trucker. On appeal from an entry of summary judgment for the elevator, the farmers argue: (1) there are genuine issues of material fact; and (2) the trial court abused its discretion by denying their motion to stay entry of judgment so as to permit further discovery. We disagree and affirm.

## FACTS

Robert, David, and Hazel Schluter are grain farmers in Starbuck, Minnesota. The elevator is a public grain elevator in Murdock, Minnesota. For several years prior to the events of this case, the independent trucker had engaged in the practice of buying grain from various farmers, hauling it to the elevator, and selling it. Both the farmers and the elevator had done business with the trucker in this manner prior to the transaction at issue.

In May, June and July of 1988, the trucker delivered 114,877 bushels of corn and 3,454 bushels of soybeans to the elevator. This included 29,056 bushels of the farmers' corn. On the scale tickets issued by the elevator, the trucker's name is listed as the owner of the grain and there is a "STG" (meaning "storage") notation. At his deposition, the trucker admitted he represented to the elevator that he was the owner of the grain. The elevator checked for liens against the grain, and found none.

Between May 20 and July 13, the elevator issued checks to the trucker totalling $288,000. At his subsequent bankruptcy hearing, both the trucker and the elevator stated the transaction was a "price later" agreement.[1] No warehouse receipts were issued either to the trucker or to anyone else by the elevator. On June 5, 1989, the elevator sold the grain in question for $302,638.33. It applied this sum against the $288,000.00 originally paid to the trucker and charged the remaining $14,638.33 as interest.

The farmers never received payment for their grain from the trucker. Nor did they

C. David Nelson, Nelson and Obenland, Glenwood, for appellants.

Gerald J. Seibel, Fluegel, Anderson, Dalager & Seibel, Chartered, Morris, for respondent.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

SHORT, Judge.

Robert, David, and Hazel Schluter (farmers) seek payment from United Farmers Elevator (elevator) for grain delivered to

---

1. In such a transaction, the grain elevator takes delivery of the grain, pays the delivering party a percentage of its current "board" value, and agrees to pay the delivering party the full price upon resale at a later date. Unless the delivering party repays the advance, interest is charged. This price is determined by the market value as of the date of resale.

receive any receipts from the trucker or the elevator. The farmers filed a claim with the Minnesota Department of Agriculture against the storage bond of the elevator. The claim alleged that the elevator breached its storage bond by selling their corn in June 1989 "without their permission or knowledge." The Department denied the claim on the ground the farmers had submitted insufficient evidence that the elevator had any grain storage obligation to them. In support of this conclusion, the Department noted the absence of any warehouse receipt issued for the grain and the farmers' failure to inquire either as to a warehouse receipt for their grain or as to why scale tickets were issued to the trucker as the owner of the grain. It also cited their delay of one year in contacting the elevator after delivery of the grain.

The farmers then filed suit alleging the elevator either converted the proceeds from sale of the grain or, alternatively, negligently sold the grain and paid the trucker. The amended answer raised the affirmative defense of superior title as a buyer in the ordinary course of business under Minn. Stat. § 336.2–403 (1990). The elevator moved for summary judgment, and the farmers moved for partial summary judgment to preclude the elevator from asserting the defense of superior title to the grain. The farmers also filed a motion to compel discovery and to either continue the summary judgment hearing or stay entry of judgment pending completion of discovery. The trial court entered judgment for the elevator and denied the other motions.

## ISSUES

I. Did the trial court properly grant summary judgment to the elevator?

II. Did the trial court abuse its discretion by denying the farmers' motions to compel discovery and stay entry of judgment?

## ANALYSIS

On appeal from a grant of summary judgment, this court determines whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the farmers, and do not defer to a trial court's application of law. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Summary judgment is appropriate if a party fails to make a showing sufficient to establish the existence of an essential element to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Motions to compel discovery, continue a hearing and/or stay entry of judgment are within the trial court's discretion, and its decision will not be reversed absent a clear showing that it abused its discretion. *Stubblefield v. Gruenberg*, 426 N.W.2d 912, 916 (Minn.App.1988).

## I.

[1] The issue before us is whether UCC § 2–403 applies to the grain transaction in this case. Minn.Stat. § 336.2–403(2) and (3) (1990) provide:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

"Buyer in ordinary course of business" is defined as:

* * * A person who in good faith and without knowledge that the sale to that person is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * * * "Buying"

may be for cash or by exchange of other property or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

Minn.Stat. § 336.1–201(9) (1990). "Merchant" is defined as:

> * * * A person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Minn.Stat. § 336.2–104(1) (1990).

■ Under the UCC, "good faith" means "honesty in fact in the conduct or transaction concerned," and "knowledge" means actual knowledge rather than reason to know. Minn.Stat. § 336.1–201(19) and (25) (1990). Under Minnesota law, the good faith test is a subjective rather than objective test. It requires honesty of intent rather than the absence of circumstances which would put an ordinarily prudent purchaser on inquiry. It is an issue of honesty of intent rather than of diligence or negligence. *Eldon's Super Fresh Stores, Inc. v. Merrill Lynch,* 296 Minn. 130, 136, 207 N.W.2d 282, 287 (1973).

> Some term it the "white heart, empty head" test. It is not sufficient that there be circumstances or suspicions such as would put a careful purchaser upon inquiry. We have traditionally held that subjective good faith is simply "the honest belief that [your] conduct is rightful." (Citation omitted.)

*Wohlrabe v. Pownell,* 307 N.W.2d 478, 483 (Minn.1981).

■ It is undisputed the trucker had for several years bought and sold grain in the farmers' area, and the elevator had done business with the trucker not only as a hauler of grain belonging to others but also as a seller of grain belonging to himself. Thus, he was known in the area as a buyer and seller. This combination of the trucker's own conduct over time and his reputation in the area are sufficient to qualify him as a "merchant" of grain under the UCC, since he "deal[t] in goods of the kind" or otherwise "[held] himself out as having knowledge or skill" as a grain buyer and seller.

The trucker admitted under oath that when he delivered the farmers' grain to the elevator he represented he was the owner. The elevator did a lien check on the trucker. The farmers failed to offer any evidence that the elevator had actual knowledge of the farmers' interest in the grain either when the trucker delivered it or when the elevator sold it. Although the farmers' names appear in handwriting on the scale tickets issued by the elevator to the trucker, the trucker admitted at his deposition this handwriting was his own. The farmers received no money or warehouse receipts for their grain.

■ Under these facts, the trucker was a "merchant" and the farmers entrusted their grain to him. *See Simonds–Shields–Theis Grain Co. v. Far–Mar–Co., Inc.,* 575 F.Supp. 290, 292, 37 UCC Rep.Serv. 1547 (W.D.Mo.1983). Because the transaction between the trucker and the elevator was a sale with title shifting immediately, and because the elevator acted in good faith, we hold Minn.Stat. § 336.2–403(2) and (3) apply to the facts of this case.

The farmers argue there are fact issues in dispute concerning the elevator's negligence and the trucker's conversion of the grain which bar summary judgment in this case. We disagree. Facts relating to the trucker's conversion of the grain or the elevator's inquiries beyond the trucker's representation of ownership are immaterial where the farmer (a) chose the trucker to transport and deliver the grain, and (b) entrusted the grain to the trucker, who was also a merchant. While we do not endorse these industry practices, the UCC mandates that the farmers, not the elevator, bear the loss. *See Simonds* at 293, n. 1.

The farmers also argue that the notation "STG" or "store" on the scale tickets issued by the elevator to the trucker should preclude summary judgment for the elevator. We disagree. The document on which the notation appears recites the trucker as owner. Thus, the notation could at most raise an issue as to a storage arrangement between the elevator and the trucker, not between the elevator and the farmers. In addition, both the trucker and the elevator agree the transaction was a "price later" and not a "storage" transaction.

■ In seeking to create a fact issue, the farmers cite the elevator's alleged violations of the Grain Storage Act, Minn.Stat. §§ 232.20–.25 (1990). Again, the scale tickets show the trucker as the owner of the grain. Thus, the Grain Storage Act has no bearing on this case in the absence of evidence of a storage agreement between the elevator and the farmers.

Finally, the farmers argue the trial court improperly relied on the findings and conclusions of the federal courts in the trucker's bankruptcy proceeding and the Minnesota Department of Agriculture's decision in their storage bond claim. This argument is without record support. While the trial court included these other decisions in its findings of fact, there is no indication the trial court gave preclusive or binding effect to them.

## II.

■ On March 27, 1991, the farmers submitted additional interrogatories and requests for production of documents. The period for responding to these requests extended until six days after the summary judgment hearing was held. At the time of the hearing, the elevator had not yet answered any of these discovery requests. The farmers argue this additional discovery would create a fact issue concerning who owned the grain at the time the trucker delivered it to the elevator. However, there is no indication any further discovery would alter the facts on (a) the elevator's knowledge at time of sale, or (b) the "price later" nature of the transaction. The farmers failed to pursue discovery diligently in this case or to notify the trial court that additional relevant discovery was necessary. See Bixler by Bixler v. J.C. Penney Co., Inc., 376 N.W.2d 209, 217 (Minn.1985). Under these circumstances, the trial court did not abuse its discretion in denying the farmers' post-hearing motions.

## DECISION

Under Minn.Stat. § 336.2–403, the trial court properly granted summary judgment to the elevator because the undisputed facts show the farmers entrusted their grain to an independent trucker who was also a merchant, thereby empowering him to transfer ownership to the elevator as a buyer in the ordinary course of business. In addition, the trial court did not abuse its discretion in denying the farmers' motion to stay entry of judgment where they had ample opportunity before the hearing either to compel discovery or to seek a continuance of the hearing to permit further discovery.

Affirmed.

KLAPHAKE, Judge (dissenting).

I respectfully dissent and would reverse the judgment and remand for trial on the merits. Viewing, as we must, the evidence in the light most favorable to the farmers, I believe that two substantial fact issues preclude summary judgment in this case.

First, the evidence is sufficient to permit a factfinder to conclude that this was a storage transaction rather than the sale that the elevator claims. Each of the applicable scale tickets issued by the elevator were marked "STG" or "store." There was no indication on any of the tickets that the grain was received on any form of the "price later" contract that the elevator claimed. Moreover, no price was indicated on any of the scale tickets. The absence of such price notation was a clear violation of Minn.Stat. § 232.23, subd. 2 (1990), which requires that:

The scale ticket shall state specifically whether the grain is received on contract, for storage, for shipment or consignment or sold. If the grain is re-

ceived on contract or sold, the price shall be indicated on the scale ticket.

Second, even if the transaction were a sale, the evidence here permits an inference that the elevator is not a "good faith purchaser." In a three-month period the elevator accepted delivery of, and purports to have purchased, 114,877 bushels of corn and 3,454 bushels of soybeans from the trucker whom the elevator knew not to be a grain producer, and who was at the time heavily in debt to the elevator. As a licensed grain dealer, the elevator arguably knew that the trucker could not legally possess such large amounts of grain unless he was also licensed by the state, but failed to take minimal steps to determine whether he was in fact properly licensed. In my view, this evidence is inconsistent with the notion of good faith. The majority properly notes that "the good faith test is a subjective rather than objective test." Since the subjective test necessarily involves the credibility of the elevator operator, I believe that the question of the elevator's "honest belief in the rightfulness of its actions" is properly resolved by a jury rather than on a motion for summary judgment.

For the above reasons, I would reverse summary judgment in this case and allow a jury, as factfinder, to determine the merits of the farmers' claims.