## CELIA COUILLARD v. CHARLES T. MILLER HOSPITAL, INC., AND OTHERS.

92 N. W. (2d) 96.

August 15, 1958—No. 37,423.

*Robbie & Hoffman,* for appellant.

*William P. O'Brien* and *Cummins, Cummins, Hammond & Ames,* for respondent Edward M. Schons.

*Richard J. Leonard* and *Doherty, Rumble & Butler,* for respondent Charles T. Miller Hospital, Inc.

*George G. McPartlin,* for respondent M. L. Larson.

MURPHY, JUSTICE.

This is an appeal from summary judgments entered against the plaintiff in a malpractice action. Defendant The Charles T. Miller Hospital, Inc., is a hospital in the city of St. Paul, Minnesota; defendants Dr. Schons and Dr. Larson are practicing physicians in that city. No appeal was taken from the judgment in favor of The Charles T. Miller Hospital, Inc.

The complaint asserts that the plaintiff sustained an injury to her

lower back on April 18, 1952, as a result of a fall while she was a passenger on a bus operated by the St. Paul Street Railway Company; that in the treatment of said injury she was attended by Dr. Larson, who in turn called in Dr. Schons for the purpose of diagnosing and treating the back injury. The complaint alleges that as a matter of fact the plaintiff sustained a fracture to a vertebra as a result of the accident, but that the defendant physicians wrongfully diagnosed the condition as a cystic lesion to her second lumbar vertebra and in their treatment of the lesion the defendants negligently administered X-ray treatments from which the plaintiff received serious burns. The complaint further alleges that, through the deceit and fraud of the defendants, she was prevented from discovering their wrongful acts until the time of the present action. Because of the alleged malpractice of the defendants, the plaintiff seeks damages in a substantial amount.

The defendants in their answers allege that the plaintiff had commenced an action against the St. Paul Street Railway Company in which she sought to recover damages in full compensation for all injuries sustained as a result of her fall described in the complaint. The answers assert two affirmative defenses: (1) They set up the 2-year statute of limitations for actions against physicians and hospitals (M. S. A. 541.07); and (2) they assert there was a compromise settlement in which the street railway company paid the plaintiff $10,000, in return for which she signed a release discharging the company "from all claims and demands of every kind and nature for all injuries and damages and all effects and results thereof, whether past, present or future that ever may be thought of as resulting or ever developing at any time in the future from such accident and injuries."

■ The motion for summary judgment was made at a pretrial conference. We are told on oral argument that a record was made of those proceedings. In the printed record before us, however, there appear certain affidavits of counsel for the plaintiff, Dr. Schons, and The Charles T. Miller Hospital, Inc. The defendants do not rely on these affidavits. Counsel for Dr. Schons agrees that these affidavits are not competent and that they fail to meet the requirements of Rule 56.05 of Rules of Civil Procedure. That rule requires that on motion for summary judgment "Supporting and opposing affidavits shall be made

on *personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Italics supplied.) Aside from the affidavit of the plaintiff's attorneys with reference to certain facts in connection with the original trial against the street railway company, there is nothing in the supporting affidavits of the parties to indicate that they were made on personal knowledge or upon facts which would be admissible as evidence, nor is there any showing that the affiants are competent to testify as to the matters stated. The record does not show if the trial court considered these affidavits or the facts stated in them on the motion, and on this appeal from the summary judgment we will not do so. We shall consider this motion as having been made on the pleadings and on the release.

■ Rule 56.03 provides that on a motion for summary judgment "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The judgment appealed from in this case is somewhat different from those usually presented in appeals from summary judgment in which the court has before it competent affidavits, depositions, and other materials in addition to the pleadings.[1] We have before us for consideration a construction of the plaintiff's complaint, the answers, the release, and the affidavit of the attorney for the plaintiff to the effect that the release is in fact a partial release and does not include a settlement of the claim against the defendant physicians. If any statement of facts consistent with the complaint can avoid the defenses of the release and the statute of limitations, the summary judgment must be reversed and the plaintiff given an opportunity to prove at the trial that such a statement of

---

[1] Under Rule 7.01, Rules of Civil Procedure, where the answer sets up an affirmative defense such as the release, it is no longer necessary or permissible to plead by way of reply. Although the court was empowered to order a reply, it did not do so. It is comprehended under the new rules, however, that procedures for discovery will, by disclosing the facts, more adequately serve the purpose to particularize the existing issues. 1 Youngquist & Blacik, Minnesota Rules Practice, p. 193.

facts is true.

■ The first and most important question before us is whether the release is a bar to plaintiff's action under any set of facts which might be proved consistent with the complaint. It is recognized that, where a person is injured by the wrong or negligence of another and he himself is not negligent in the selection of a medical attendant, the wrongdoer is liable for all the proximate results of his own act although the consequences of his injury would have been less serious than they proved to be if the attendant had exercised proper professional skill and care. Benesh v. Garvais, 221 Minn. 1, 20 N. W. (2d) 532; Smith v. Mann, 184 Minn. 485, 239 N. W. 223; Annotation, 40 A. L. R. (2d) 1075. It is also recognized that a general release of one responsible for the original injury bars action by the injured person against a physician or surgeon for the negligent treatment of the injury. This rule is based upon the proposition that, since the one causing the original injury is liable for the consequences of the physician's negligence which would not have occurred except for the original wrongful act, where the physician was selected with due care by the injured party, a release of one so liable must be considered to have been a release of the claim based upon the physician's negligence as well as the negligence of the original wrongdoer. The underlying reason for the rule is that there should be no double recovery for the same injury. See, Annotation, 40 A. L. R. (2d) 1075. In Smith v. Mann, *supra,* however, we seem to have relied on the conclusive character of a release, reasoning that it is an instrument contractual in nature and within the rule prohibiting the admission of parol evidence to vary or contradict its terms.

It appears to be the contention of the plaintiff here that she should be permitted to prove that this action in no way involves "double recovery for the same injury." The plaintiff asserts that the settlement with the street railway company was entered into after trial had been commenced and certain evidence introduced and that in the course of the trial the court ruled that the injuries sustained by the plaintiff as a result of the treatment of the doctors constituted a separate cause of action "for which the St. Paul Street Railway Company cannot be held liable." The plaintiff argues that the trial court took the view that damages resulting from the alleged negligence of defendant physicians

constituted a new or separate cause of action which was not a part of the plaintiff's claim for relief against the street railway company and that the settlement and release were entered into on that theory. The plaintiff cites Dickow v. Cookinham, 123 Cal. App. (2d) 81, 266 P. (2d) 63, 40 A. L. R. (2d) 1066, to the effect that a release of the original wrongdoer releases an attending doctor from liability for aggravating the injury if there has been full compensation for both injuries, or intent to accept payment in full settlement of both injuries, but not otherwise.

Our decisions in Smith v. Mann, *supra,* and Benesh v. Garvais, *supra,* express emphatic views to the contrary. In those cases we held that, where it appears from the release that the plaintiff plainly discharges the original wrongdoer from all damages for which he is liable, including any aggravation of the injury caused by the negligence of the physician, the release not only operates in personam on the releasee and his liability but also in rem on the releasor's cause of action. These decisions are predicated upon the proposition that once a release is given it discharges all parties liable for the injury without reference to whether the releasor received full compensation and without reference to the intention of the parties to the release. In Smith v. Mann, *supra,* it is definitely stated (184 Minn. 489, 239 N. W. 224): "If the instrument be in fact a release, it discharges all parties liable for the injury." And that once a release is given (184 Minn. 488, 239 N. W. 224), "That ends the matter, and there is now no remaining cause of action against the latter. Moreover, plaintiff could not by parol evidence so limit the effect of * * * [the] release as to retain a cause of action against defendant. * * * The decisive thing now is not whether plaintiff actually released this defendant, or intended to do so, or got full compensation, but rather and only whether she has discharged her whole cause of action." If we are to follow this authority, it is apparent that the plaintiff may not be permitted to show that the release given to the street railway company was never intended to release the defendants, who allegedly injured her, nor may she be permitted to show that the release was in fact limited to a settlement of damages resulting only from the wrongful act of the defendant railway company.

We recognized in Smith v. Mann, 184 Minn. 485, 489, 239 N. W.

223, 224, "the difficulties of the situation and that injustice may sometimes result" from the rule and gave as our reasons for following it that (184 Minn. 488, 239 N. W. 224) "the law [is] too definitely set the other way" and that parol evidence is not admissible to explain the transaction because the releasor "cannot escape the necessary legal effect of * * * [his] acts."

It may be conceded that the holdings in Benesh v. Garvais, *supra,* and Smith v. Mann, *supra,* provide a certain facility in ending disputes in this area. But when we peremptorily say that a release ends the matter, we must face the objection that in doing so we are making a decision without taking the trouble to examine the particular facts and circumstances involved. This arbitrary approach to a consideration of the effect of a release goes beyond any reasonable necessity to honor the principle of law that a litigant should not recover twice for the same injury. Moreover, these holdings offend the basic principle of law that an injured party should be wholly compensated for his injuries where liability exists. We think, accordingly, that the holdings in Benesh v. Garvais, *supra,* and Smith v. Mann, *supra,* should be reexamined in the light of other decisions of this court which emphasize that the intent of the parties to a release must be considered and that the express language of a release is not alone controlling.

We held in Larson v. Stowe, 228 Minn. 216, 36 N. W. (2d) 601, 8 A. L. R. (2d) 455, decided in 1949, that a person signing a release for personal injuries cannot be held, as a matter of law, to have released his claim for injuries about which he was ignorant at the time of the release even though the release expressly stated that it covered unknown as well as known injuries. We there held that the express language of the release must be considered, together with "the factual element of an existing intent to include unknown injuries," and that the scope of the intent of the parties was a question of fact. We there said (228 Minn. 219, 36 N. W. [2d] 603):

"* * * The existence of injuries of such a character that reasonable parties could not have entered into the agreement except through error is an element that weighs heavily against the finality of all-inclusive language. * * * by reason of *the special interest of the public in pre-*

*venting injured persons from unnecessarily becoming burdens upon society in consequence of their improvident settlement of injuries,* the well-developed tendency of the law—which though acknowledged in practice is usually not acknowledged in name—is to adopt *a more liberal rule for the setting aside of releases in these cases than otherwise obtains."* (Italics supplied.)

' In Aronovitch v. Levy, 238 Minn. 237, 246, 56 N. W. (2d) 570, 576, 34 A. L. R. (2d) 1306, 1313, we held under the circumstances in that case that the release was not a bar to recovery "for unknown injuries not within the contemplation of the parties at the time of contracting for such release" and that whether the parties intended the release to cover unknown injuries "is usually a question of fact." And in Larson v. Stowe, *supra,* we cited Larson v. Sventek, 211 Minn. 385, 388, 1 N. W. (2d) 608, 610, in which we said:

"* * * The rule applied in Minnesota is that a release is incontestable only when the parties expressly and intentionally settle for unknown injuries and that therefore it is ordinarily a fact question for the jury whether the parties fixed the consideration by, and assumed as a basis for the release, known injuries, or whether they intended to compromise claims for all injuries, known or unknown. Hanson v. Northern States Power Co. 198 Minn. 24, 268 N. W. 642; Mix v. Downing, 176 Minn. 156, 222 N. W. 913; Nygard v. Minneapolis St. Ry. Co. 147 Minn. 109, 179 N. W. 642; Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. The two situations are often hard to distinguish; but if the circumstances are such that, despite the wording of the release, the parties cannot be said to have contracted with reference to unknown injuries, and a material, unknown injury subsequently develops, mutual mistake exists and parol evidence may be introduced to show it."

It should be noted that by holding that where an unknown injury subsequently develops "mutual mistake exists and parol evidence may be introduced to show it" we departed from the view expressed in Smith v. Mann, 184 Minn. 485, 488, 239 N. W. 223, 224, that: "plaintiff could not by parol evidence so limit the effect of * * * [the] release as to

retain a cause of action against defendant."[2]

It is of importance also to consider the recent views expressed by this court on the subject of releases given to a joint tortfeasor. In Gronquist v. Olson, 242 Minn. 119, 64 N. W. (2d) 159, the release involved contained a reservation of right to sue a remaining joint tortfeasor, although it did contain some language expressing an unqualified release of the cause of action. That case is pertinent here for the reason that Mr. Justice Nelson took occasion to review and clarify the law with relation to the subject of releases as being upon the liability of joint tortfeasors. In doing so he made this significant statement (242 Minn. 126, 128, 64 N. W. [2d] 164, 165):

"* * * the distinction between a 'release' and a 'covenant not to sue' is entirely artificial. * * * The just and true rule should be, and we believe is, that, if the injured party has accepted satisfaction in full for the injury suffered by him, the law will not permit him to recover again for the same injury; but if he has not received full satisfaction, or that which the law considers such, he is not barred until he has received full satisfaction. If he receives a part of the damages from one of the wrongdoers, the receipt thereof not being understood to be in full satisfaction of the injury, he does not thereby discharge the others from liability.

* * * * *

"We believe that the factors determinative of whether a release of one of several joint tortfeasors will operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact

---

[2]The departure from the authority of Smith v. Mann, 184 Minn. 485, 239 N. W. 223, is made apparent by the dissent in Larson v. Sventek, 211 Minn. 385, 390, 1 N. W. (2d) 608, 611, where it is observed: "Quite inadvertently, this decision applies to releases from liability for personal injuries a rule we do not apply in similar cases arising from other torts or breach of contract. Thereby is being created an exception which in reason has no basis. The error results from failure to appreciate that a release is a contract, in the making of which the parties exercise unlimited contractual competence." This dissent, written by the author of Smith v. Mann, *supra,* substantially expresses the same grounds upon which the holdings in Smith v. Mann, *supra,* and Benesh v. Garvais, *supra,* are based.

received full compensation for his injury. If we apply that rule, then, where one joint tortfeasor is released, *regardless of what form that release may take,* as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction."

As we view the present authorities of this state with reference to "unknown injury" and "joint tortfeasor" situations, it appears that a release is to be binding only with respect to claims for injuries actually within the contemplation of the parties to the release, and this is so regardless of the language of the release. We know of no reason why the same rule as to releases followed in "unknown injury" and "joint tortfeasor" cases should not be followed in the situation before us. In the present case the defendants may be properly thought of as subsequent tortfeasors. While the distinction between joint and subsequent tortfeasors may be important for many purposes, there seems to be no reason for admitting parol evidence to determine the nature of an agreement between parties to a release in one case and not in another. Prosser, *Joint Torts and Several Liability,* 25 Calif. L. Rev. 413.

We think that considerations of practical justice require us to say that a plaintiff should not be compelled to surrender his claim for relief against a wrongdoer unless he has intentionally done so, or unless he has received full compensation for his claim. Of course, where full satisfaction has been made, or where it is agreed that the amount paid under the release is accepted in full satisfaction, no claim should remain against any tortfeasor. But these are questions of fact to be resolved by the jury. Prosser, Torts (2 ed.) § 46, p. 245.

Nor do we believe there is sufficient reason for holding, as we did in Smith v. Mann, *supra,* that parol evidence is not admissible to show the true nature and extent of the release, particularly in light of the fact that the subsequent joint tortfeasors in this instance, who might claim the protection of the rule, are neither parties to the release nor are they named in it. "The refusal to let such third parties hide behind the parol evidence rule, when the documentary 'release' was not in fact intended

to discharge claims against them and does not on its face purport to express such an intention, is a thoroughly justified refusal. Testimony that is offered for this purpose should never be excluded whoever may be the parties to the suit in which it is offered." 4 Corbin, Contracts, § 934, p. 760.

We, accordingly, hold that, in so far as Benesh v. Garvais, *supra,* and Smith v. Mann, *supra,* do not permit parol proof that a party to a release never was compensated for and never intended to release claims based on injuries caused by a subsequent tortfeasor for which the releasee is also liable because of the rules of proximate cause, those decisions are overruled. The intent of the parties and the question of actual compensation are questions of fact for the jury. The release is, however, prima facie evidence that full compensation was received from the original wrongdoer, including that for injuries caused by the subsequent tortfeasors, and the burden is on the plaintiff to prove the contrary.

■ The defendants contend that they are entitled to summary judgment as a matter of law on the ground that plaintiff's action is barred by the 2-year statute of limitations, § 541.07. Although further procedures for discovery may prove they are right, we cannot say that on the present state of the record they are entitled to summary judgment. Without reviewing the complaint and answer at length it is necessary only to state that, so long as the relationship of physician and patient continues as to a particular condition he is employed to cure, and the physician continues to attend and examine the patient in relation thereto, and there is something more to be done by the physician in order to effect a cure, the operation of the statute of limitations is suspended. Schmit v. Esser, 178 Minn. 82, 226 N. W. 196; Id. 183 Minn. 354, 236 N. W. 622, 74 A. L. R. 1312.

■ It may also be observed that, when the defendant by fraud prevents the plaintiff from learning of his cause of action, the statute of limitations does not begin to run until the plaintiff could by reasonable diligence have discovered the cause of action. Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633.

Reversed.