Virgil **DYKES** and Connie Dykes d/b/a Dykes Farms, Appellants,

v.

**Sukup Manufacturing Company, defendant and third party plaintiff, Respondent,**

v.

**SUPERIOR, INC., third party defendant, Respondent.**

No. A08–0583.

Court of Appeals of Minnesota.

March 3, 2009.

William D. Mahler, Will Mahler Law Firm, Rochester, MN, for appellants.

Patrick D. Reilly, Leon R. Erstad, Erstad & Riemer, P.A., Minneapolis, MN, for respondent Sukup Manufacturing Company.

Robert G. Manly, Vogel Law Firm, Moorhead, MN, for respondent Superior, Inc.

Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and SCHELLHAS, Judge.

## OPINION

KALITOWSKI, Judge.

Appellants Virgil Dykes and Connie Dykes d/b/a Dykes Farms challenge an adverse grant of summary judgment on their claims against respondent Sukup Manufacturing Company (Sukup). Appellants contend that the district court erred by concluding that a 2003 settlement agreement between appellants and third-party defendant, respondent Superior, Inc. (Superior), released Sukup from liability on claims brought by appellants against Sukup.

## FACTS

Appellants are farmers residing in Wabasha County, Minnesota. Sukup manufactures farm equipment and machinery including a pneumatic grain-moving system called the Cyclone. Superior is a dealer of Sukup products and in 2002, appellants purchased a Cyclone grain-moving system from Superior.

Prior to the 2002 harvest, Superior installed the Cyclone on appellants' property. When the harvest began, appellants used the Cyclone to move corn into storage bins. Appellants claim that they observed the Cyclone moving the corn into the storage bins at a very high rate of speed. Because of concerns that the Cyclone was damaging their corn, appellants allege that they stopped using the Cyclone after filling their bins with approximately 75,000 bushels of corn. Appellants state that they attempted to cooperate with Superior in efforts to modify and/or repair the Cyclone but that they had to stop using the Cyclone because of the extensive damage to their harvested corn.

In February 2003, Superior filed and sought enforcement of a mechanic's lien on appellants' property, complaining that appellants failed to pay for materials and services related to the installation of the Cyclone. Appellants counterclaimed, contending that Superior failed to install the Cyclone in a workmanlike manner. After participating in mediation, appellants and Superior entered into an agreement in August 2003 whereby Superior agreed (1) to remove the lien it placed on appellants' property; (2) to remove the Cyclone; and (3) to restore appellants' property that was removed during installation of the Cyclone. Appellants agreed to dismiss their answer and counterclaim. Subsequently, appellants and Superior stipulated to dismissal of the action between them, with prejudice.

In September 2007, appellants filed this action against Sukup alleging breaches of express and implied warranties, negligence, strict liability, fraud, and a violation of the Minnesota Consumer Fraud Act. Sukup filed a third-party complaint against Superior and subsequently moved for summary judgment against appellants, arguing that the 2003 settlement agreement between Superior and appellants released Sukup from any liability to appellants. The district court granted Sukup's motion and judgment was entered against appellants in May 2008.

## ISSUE

Did the district court err by determining that appellants' settlement agreement releasing Superior also released Sukup from joint and several liability because there was no language in the settlement agreement reserving claims against Sukup?

## ANALYSIS

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. State, Dep't of Natural Res.,* 693 N.W.2d 181, 186 (Minn.2005). The function of a court on a summary judgment motion is to determine whether issues of fact exist, not to resolve fact issues. *Albright v. Henry,* 285 Minn. 452, 464, 174 N.W.2d 106, 113 (1970). On appeal from summary judgment we ask (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

Early Minnesota cases broadly applied the general rule that the release of one joint tortfeasor from liability releases all other tortfeasors. *See Luxenburg v. Can–Tex Indus.,* 257 N.W.2d 804, 807 (Minn.1977) (discussing early application of the rule). But in *Gronquist v. Olson,* 242 Minn. 119, 64 N.W.2d 159 (1954), the Minnesota Supreme Court retreated from the broad and indiscriminate application of this rule. *See id.* at 807–08 (recognizing and discussing *Gronquist*'s adoption of a more narrow application of the rule). Sub-

sequent cases have followed *Gronquist.* For example, in *Couillard v. ·Charles T. Miller Hosp., Inc.,* the Minnesota Supreme Court expressly disapproved of the indiscriminate application of the general rule, stating that such a rule "offend[s] the basic principle of law that an injured party should be wholly compensated for his injuries where liability exists." 253 Minn. 418, 424, 92 N.W.2d 96, 100 (1958); *see also Wall v. Fairview Hosp. & Healthcare Services,* 584 N.W.2d 395, 403 (Minn.1998) ("[M]ore than 40 years ago, we held that partial satisfaction from one joint tortfeasor does not prevent recovery from another joint tortfeasor."); *Liberty Mut. Ins. Co. v. Amer. Family Mut. Ins. Co.,* 463 N.W.2d 750, 756–57 (Minn.1990) (relying on *Gronquist* to determine that partial satisfaction did not preclude recovery from another joint tortfeasor); *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520, 523 (Minn.1986) (stating intent of the release of other joint tortfeasors is a key factor in determining liability); *Luxenburg,* 257 N.W.2d at 807–08 (applying *Gronquist* ). This court has noted that "rigid application of this rule has been criticized and ultimately rejected." *Johnson v. Brown,* 401 N.W.2d 85, 89 (Minn.App.1987), *review denied* (Minn. Apr. 23, 1987).

■ In *Gronquist,* the supreme court adopted a two-part test to determine whether the release of one joint tortfeasor operates to release any remaining tortfeasors from joint and several liability. 242 Minn. at 128, 64 N.W.2d at 165. The determinative factors are "(1) [t]he intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury." *Id.* "The intent of the parties and the question of actual compensation are questions of fact for the jury."

*Couillard,* 253 Minn. ·at 428, 92 N.W.2d at 103.

■ Here, the district court concluded that the 2003 settlement agreement between appellants and Superior precluded appellants from bringing any claims against Sukup. The district court arrived at this conclusion because the agreement did not demonstrate the "intent to reserve any rights to proceed against any other potential joint tort feasors." The relevant language in the settlement agreement provides,

> Superior Inc. will remove its lien it placed upon this property and dismiss its complaint and [appellants] will dismiss their answer and counter complaint.

Because the district court was not persuaded that "the parties intended that there be a reservation of rights to bring an action against any other tort feasor for the same claimed damages," it ordered summary judgment in favor of Sukup.·

■ We conclude that the district court misapplied the law by presuming the release of joint tortfeasors in the absence of contrary intent expressed by the injured party to a settlement agreement. The appropriate inquiry is whether the injured party, by settling with and releasing one joint tortfeasor, intended to release other joint tortfeasors from joint and several liability. *See Johnson,* 401 N.W.2d at 88 (stating the "release of one alleged tortfeasor will release all others *if* the settlement agreement manifests such an intent") (emphasis in original) (quoting *Bixler by Bixler v. J.C. Penney Co.,* 376 N.W.2d 209, 214–15 (Minn.1985)). Thus, we reverse the grant of summary judgment because the district court erred in its application of the law.

■ In addition, the record does not support a conclusion that appellants re-

ceived full compensation for their injury as required by *Gronquist.* This two-part test precludes an injured party who settled with one joint tortfeasor, and received full compensation for his injuries in the settlement, from bringing claims against other joint tortfeasors. *Gronquist,* 242 Minn. at 128, 64 N.W.2d at 165. The purpose behind this requirement is to prevent double recovery. *See id.* at 127–28, 64 N.W.2d at 165 (stating a person can have but one full satisfaction for his injuries). Here, the district court stated that the parties are "two and a half million dollars apart on their opinions as to what amount would render [appellants] fully compensated" and that "the matter of what constitutes full compensation is in dispute." Thus, there is a factual dispute regarding whether the settlement with Superior fully compensated appellants.

## DECISION

The district court misapplied the law when it determined that appellants' failure to expressly reserve claims against Sukup in the settlement agreement conclusively proved an intent to release Sukup from liability. In addition, there is a factual dispute regarding whether appellants were fully compensated as a result of the settlement with Superior. Therefore, we reverse the grant of summary judgment and remand this matter for further proceedings.

**Reversed and remanded.**