Virgil DYKES and Connie Dykes d/b/a
Dykes Farms, Respondents,

v.

SUKUP MANUFACTURING COMPA-
NY, defendant and third-party
plaintiff, Appellant,

v.

Superior, Inc., third-party defendant,
Respondent.

No. A08–583.

Supreme Court of Minnesota.

May 13, 2010.

William D. Mahler, Will Mahler Law Firm, Rochester, MN, for respondents Virgil Dykes and Connie Dykes d/b/a Dykes Farms.

Patrick D. Reilly, Leon R. Erstad, Erstad & Riemer, P.A., Minneapolis, MN, for appellant.

Charles A. Bird, Bird, Jacobsen & Stevens, P.C., Rochester, MN, for amicus curiae Minnesota Association for Justice.

Diane B. Bratvold, Jessica J. Stomski, Briggs and Morgan, P.A., Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

DIETZEN, Justice.

Respondents Virgil Dykes and Connie Dykes, d/b/a Dykes Farms, commenced this lawsuit against appellant Sukup Manufacturing Company asserting claims of consumer fraud, negligence, and breach of warranty arising out of the purchase and operation of an allegedly defective grain-moving system manufactured by Sukup. Sukup denied the allegations of the complaint and moved for summary judgment alleging that when the Dykes released and dismissed their claims against the equipment dealer, Superior, Inc., in a mediated agreement arising from a prior lawsuit, the Dykes also released their claims against Sukup. The district court granted Sukup's summary judgment motion and dismissed the Dykes' claims. The court of appeals reversed and remanded on the grounds that there were fact issues regarding the scope of the mediated agreement. We affirm the decision of the court of appeals in part, reverse in part, and remand for further proceedings.

The Dykes operate a farm in southern Minnesota. Sukup manufactures farm machinery, including grain-moving equipment. Sukup markets its products through a network of independent dealers. Superior is a Sukup dealer.

Prior to 2002, the Dykes transferred their harvested corn between a grain dryer and large capacity storage bins using a portable auger. In the summer of 2001, the Dykes were introduced to Sukup's "Cyclone Pneumatic Grain Moving System," which moves the corn from grain bins to a grain dryer using blowers and air transfer tubes rather than augers. In June 2002, the Dykes contacted Superior to discuss the Sukup equipment and to request a bid. Subsequently, the Dykes entered into a contract with Superior for the purchase and installation of the "Cyclone" equipment. In September 2002, Sukup delivered its components for the grain-moving system to the Dykes' farm, where Superior installed the system. The Cyclone system was operational in October. Superior billed the Dykes $33,390 for the equipment, labor, and change orders related to the installation.

Shortly after installation, problems with the system developed. According to the Dykes, the corn was being blown through the tubes at a very high rate of speed with no way to slow it down, resulting in damage to the corn. Because of that problem, the Dykes stopped using the equipment on October 20, 2002. The Dykes later determined that 75,000 bushels of corn had been damaged. The Dykes made repeated phone calls to Superior to try to resolve the problem, but were not successful. Finally, a Sukup representative inspected the equipment on November 15, 2002, and made modifications to the equipment. Despite the modifications, the system did not function properly.

When the Dykes refused to pay Superior's invoices, Superior filed a mechanic's lien and commenced a lawsuit to enforce its lien. The lawsuit named the Dykes and two of the Dykes' lenders—Security State Bank of Pine Island and Wells Fargo Financial Leasing, Inc. The Dykes counterclaimed for damages exceeding $50,000. Following mediation in August 2003, the parties executed a document entitled "Mediated Agreement."

The mediated agreement is one page in length, and includes an introductory paragraph stating that Superior and the Dykes "reached the following agreement relating to all issues growing out of the above noted lawsuit." The four paragraphs of the agreement provide that (1) Superior "will take down and remove" the grain-moving system installed on the Dykes' property; (2) Superior will remove an auger it installed; (3) Superior will remove its lien from the Dykes' property, and the parties will dismiss the complaint, answer, and counterclaim; and (4) Superior will return two uncashed checks to the Dykes. When the terms of the agreement were satisfied, the parties executed a stipulation for dismissal "with prejudice and on [the] merits."

In August 2006, the Dykes commenced this lawsuit against Sukup asserting claims including consumer fraud, negligence, and breach of warranty, and ultimately claimed damages of $2.5 million arising out of the operation of the allegedly defective grain-moving system manufactured by Sukup. Sukup denied the allegations of the complaint and asserted a third-party complaint against the dealer, Superior, for contribution and indemnity. Subsequently, Sukup brought a motion for summary judgment to dismiss the complaint on the grounds that the Dykes had previously settled their claims against Superior, and that the mediated agreement between the Dykes and Superior had the effect of releasing Sukup. Virgil Dykes submitted an opposing affidavit in which he stated that "[a]t the mediation there were no discussions about Sukup's liability," they did not "discuss the issue of damages in any detail," the mediated agreement did not release any claims, and the Dykes did not receive full compensation. The district court agreed with Sukup and granted its motion for summary judgment dismissing the complaint.

The court of appeals reversed and remanded, holding that a settlement agreement that releases one or more joint tortfeasors does not release other tortfeasors from joint and several liability unless the parties to the settlement agreement "manifested such an intent, or if the injured party received full compensation for the damages sought against the other tortfeasors." *Dykes v. Sukup Mfg. Co.*, 761 N.W.2d 892, 893 (Minn.App.2009). As a result, the court remanded the case for resolution of the fact issues. Subsequently, we granted review.

Sukup argues that there are no genuine issues of material fact that preclude summary judgment and that the court of appeals erred in failing to affirm the summary judgment. Essentially, Sukup argues that the mediated agreement entered into by the Dykes and Superior released Superior from liability and, because the Dykes did not preserve their claims against Sukup, they thereby released Sukup. The Dykes argue that the mediated agreement is not a general release, does not manifest an intent to release Sukup, and does not provide for full compensation; therefore, the court of appeals should be affirmed.

■■■ On appeal from summary judgment, we examine whether there are genuine issues of material fact that preclude summary judgment and whether the lower court properly applied the law. *Kratzer v. Welsh Cos., LLC,* 771 N.W.2d 14, 18 (Minn. 2009). When reviewing the application of law, we apply a de novo standard of review. *Id.*

■■■ The outcome of this dispute turns on the meaning of the mediated agreement and the consequences of the dismissal with prejudice and on the merits. Thus, we must examine whether the legal effect of the agreement was to release Sukup. A settlement agreement is a con-

tract, *Ryan v. Ryan*, 292 Minn. 52, 55, 193 N.W.2d 295, 297 (1971), and we review the language of the contract to determine the intent of the parties, *Valspar Refinish, Inc., v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn.2009). When the language is clear and unambiguous, we enforce the agreement of the parties as expressed in the language of the contract. *Id.* at 364–65. But if the language is ambiguous, parol evidence may be considered to determine intent. *Flynn v. Sawyer*, 272 N.W.2d 904, 908 (Minn.1978). Whether a contract is ambiguous is a question of law that we review de novo. *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008). The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations. *Id.*

Historically, the release of one joint tortfeasor released all other joint tortfeasors. *Frey v. Snelgrove*, 269 N.W.2d 918, 921 (Minn.1978); *see generally* W. Prosser & W. Page Keeton, *Prosser and Keeton on Torts* § 49, at 332 (5th ed. 1984) (explaining that at common law the release of one joint tortfeasor released all others because, in the eyes of the law, there was but one cause of action against those liable for the same acts). In *Gronquist v. Olson*, 242 Minn. 119, 128, 64 N.W.2d 159, 165 (1954), we considered whether the release of one joint tortfeasor operated to discharge the other from liability. We modified the common law rule, concluding that when the injured party receives part of the damages from one tortfeasor, but "the receipt [is] not [ ] understood to be in full satisfaction of the injury," the release does not discharge the others from liability. *Id.* at 126, 64 N.W.2d at 164. We stated that the factors "determinative of whether a release of one of several joint tortfeasors will operate to release the remaining wrongdoers should be and are: (1) [t]he intention of the parties to the release instrument, and (2) whether or not the injured

party has in fact received full compensation for his injury." *Id.* at 128, 64 N.W.2d at 165; *see also Couillard v. Charles T. Miller Hosp., Inc.*, 253 Minn. 418, 426–27, 92 N.W.2d 96, 102 (1958).

■ We have observed that the court does not favor one type of settlement agreement over another. *Pac. Indem. Co. v. Thompson–Yaeger, Inc.*, 260 N.W.2d 548, 558 (Minn.1977). Rather, we examine such agreements "on a case-by-case basis and assess their validity and effect." *Id.* Moreover, we have never prescribed specific language that is necessary to create a valid release of claims. At a minimum, however, the agreement must manifest an intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom it exists to a person against whom it might have been enforced to be a release. *Gronquist*, 242 Minn. at 125, 64 N.W.2d at 163–64. Further, to release all joint tortfeasors the release must manifest an intent to release all joint tortfeasors and the claimant must have received full compensation for the injury. *Id.* at 128, 64 N.W.2d at 165.

■ The mediated agreement does not state that the Dykes release and discharge their claims against Superior. The operative language merely states that "Superior, Inc. will remove its lien it placed upon this property and dismiss its complaint and Virgil L. Dykes and Constance E. Dykes will dismiss their answer and counter complaint." Thus, the agreement does not manifest an intent to release Superior. Moreover, the agreement does not state that the Dykes were fully compensated for their injuries. We conclude that the mediated agreement did not expressly manifest an intent to release, discharge, or relinquish the Dykes' claims against Superior or Sukup. Consequently, we reverse the court of appeals' conclusion that the modi-

fied agreement released the Dykes' claim against Superior.

The mediated agreement, however, also provided that when certain conditions were satisfied, the parties would dismiss the complaint, answer and counterclaim. Pursuant to the agreement, the conditions were satisfied, and the parties executed and filed a stipulation dismissing the Superior lawsuit, including the Dykes' counterclaim, "with prejudice and on [the] merits." Judgment of dismissal was entered by the district court, and based upon that judgment, Sukup argues that the Dykes' claims against it were discharged.

■■■■ A dismissal with prejudice and on the merits executed by both parties is "a final determination and is equivalent to an adjudication on the merits" regarding the claims asserted or which could have been asserted by the parties to that lawsuit, subject to certain exceptions not applicable in this case.[1] *Butkovich v. O'Leary*, 303 Minn. 535, 536, 225 N.W.2d 847, 848 (1975). Thus, a stipulation of dismissal and the resulting judgment operates as a bar to a subsequent lawsuit by either party to the original lawsuit, which asserts claims raised or which could have been raised in the original lawsuit. *See, e.g., Favorite v. Minneapolis St. Ry. Co.,* 253 Minn. 136, 139, 91 N.W.2d 459, 462 (1958) (concluding that "dismissal with prejudice was binding upon the parties and stood as a bar to the bringing of another action on the same cause"); *cf. Coleman v. Franken,* 767 N.W.2d 453, 467 n. 18 (Minn. 2009) (barring claims on certain ballots because parties had stipulated to dismiss with prejudice any claims regarding those ballots); *see also* 1A David F. Herr & Roger S. Haydock, *Minnesota Practice—*

*Civil Rules Ann.* § 41.7 (4th ed. 2003) (explaining that a stipulation to dismiss with prejudice is effective to bar subsequent actions).

■■■■ Applying these principles to the facts of this case, we conclude that the legal effect of the dismissal of the Superior lawsuit, including the Dykes' counterclaim "with prejudice and on [the] merits," was an adjudication of the Dykes' claims against Superior for claims raised or which could have been raised in the original lawsuit. *See Favorite,* 253 Minn. at 139, 91 N.W.2d at 462. Consequently, the judgment of dismissal with prejudice and on the merits was an adjudication that extinguished and discharged the right of the Dykes to bring claims against Superior in a subsequent lawsuit, which were raised or could have been raised in the original lawsuit.

■■■■ The question remaining is whether the judgment that bars the Dykes from bringing a subsequent lawsuit against Superior also extends to bar the Dykes' claims against Sukup. Based on the record before us, we are unable to resolve that question. The parties have not briefed whether a judgment of dismissal that extinguished the Dykes' claims against Superior would bar the Dykes' claims against Sukup. Thus, we must remand the case to the district court to consider the legal effect of the judgment of dismissal on the Dykes' claims against Sukup. *See Hart v. Cessna Aircraft Co.,* 276 N.W.2d 166, 167 (Minn.1979).

■■■■ In summary, we affirm the court of appeals' decision to reverse the district court's dismissal of the Dykes' claim against Sukup. We reverse, however, the

---

1. The exceptions are fraud, collusion, mistake of fact or law, or where the trial court determines the dismissal was improvidently made and in equity and good conscience should not

be allowed to stand. *Butkovich v. O'Leary,* 303 Minn. 535, 536, 225 N.W.2d 847, 848 (1975).

court of appeals' determination that.. the mediated agreement released the Dykes' claims against Superior, and its order of remand to the district court. Our reversal is predicated on our conclusion that the mediated agreement did not manifest an intent to release Superior. Finally, we are unable to determine on this record the legal effect of the judgment of dismissal of the Dykes' claims against Sukup, and therefore we remand to the district court to make that determination.[2]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

**2.** Amicus curiae Minnesota Defense Lawyers Association (MDLA) argues that if the Dykes are allowed to pursue their claims against Sukup, the court should provide instructions to the district court upon remand to ensure that Sukup does not pay more than its fair share. Specifically, the MDLA contends that the jury instructions should include a special verdict interrogatory that requires the jury to allocate the percentage of fault attributable to the Dykes, Sukup, and Superior; and that the district court should be instructed that Sukup's liability should be no greater than the percentage of fault determined by the jury. The MDLA concedes that those issues were not raised by either party at the district court or court of appeals, and therefore were not properly preserved for appeal. Generally, issues not presented to the trial court may not be raised for the first time on appeal. *See Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 741 n. 10 (Minn.1997). We have reserved the right in rare cases to examine such an issue not considered by the trial court as the interests of justice may require. Minn. R. Civ.App. P. 103.04; *see also Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 725 n. 9 (Minn.2008). We decline to reach the issues raised by the MDLA.