*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2297**

Martha Gabriela, LLC, a Delaware limited liability company,
Appellant,

vs.

Barranca, LLC, et al.,
Defendants,

Green Mill Restaurants, LLC,
Respondent.

**Filed July 14, 2014
Affirmed
Connolly, Judge**

Anoka County District Court
File No. 02-CV-12-7052

Thomas F. DeVincke, Michael A. Putnam, Malkerson Gunn Martin LLP, Minneapolis, Minnesota (for appellant)

Gerald H. Fornwald, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

On appeal from the district court's order granting summary judgment in favor of respondent Green Mill Restaurants LLC, appellant argues that (1) it should have been awarded summary judgment on its breach-of-contract claim against respondent-guarantor and (2) the record does not show the existence of a fact question regarding the reasonableness of appellant's re-letting of the leased premises. We affirm.

## FACTS

Appellant Martha Gabriela LLC owns commercial real estate. On February 12, 1999, appellant's predecessor-in-interest entered into a lease agreement with Barranca LLC (Barranca) for restaurant space located in the Shoppes at Riverdale Commons in Coon Rapids. The lease term extended through 2014. After entering the lease, Barranca, a Green Mill franchisee, began operating a Green Mill restaurant in the leased premises.

On June 1, 2011, appellant and Barranca entered into a second amendment to the lease agreement (the second amendment). The second amendment's term began on June 1, 2011 and ended on May 31, 2021. By executing the second amendment, the parties agreed to forgive certain late rent payments and to revise the term and rent rates in the lease. Under the lease and second amendment, Barranca was obligated to pay appellant $9,277.75 for rent on the first of each month in addition to its proportionate share of property taxes, assessments, and maintenance costs.

The lease provides that "any failure by Tenant to pay Rent or make any other payment required to be made by Tenant hereunder within five (5) days from the date such

2

payment is due" is a material default and breach of the lease. It also provides that appellant can waive a default without losing the ability to declare a subsequent default:

> The failure of either Landlord or Tenant to insist upon strict performance by the other of any of the covenants, conditions, and agreements of this Lease shall not be deemed a waiver of any subsequent breach or default in any of the covenants, conditions and agreements of this Lease.

As consideration for the second amendment, Barranca's principals, Daniel Hunt (Hunt) and Franklin Kuhar (Kuhar), provided a personal guaranty equal to 24 months of rent, or $339,000. On June 14, Green Mill provided appellant with a corporate guaranty providing for the payment of 12 months of rent, or $169,500. Under the corporate guaranty, Green Mill's maximum liability reduced with each monthly rent payment made by Barranca.

In June, July, and August of 2011, appellant credited Barranca's rent because Barranca was remodeling the leased space at its own expense. Barranca remained liable for its share of property taxes, assessments, and maintenance costs, but failed to make those payments. Barranca's obligation to pay full rent under the second amendment began in September 2011. On September 1, appellant granted Barranca a $5,000 rent credit to account for delays in the construction and build-out process. Barranca paid 4,277.75 in September 2011,[1] full rent from October 2011 to May 2012, and partial rent in June 2012. Most of these payments were made after the fifth of the month, but appellant accepted them without objection and credited Barranca's account. Appellant never assessed Barranca a late fee when it received payment after the fifth of the month.

---

[1] $9,277.75 rent minus the $5,000 rent credit.

By July 2012, it became clear that Barranca's business was failing. On July 27, Green Mill paid appellant two payments totaling $43,060.60. It informed appellant that it deemed the payments to be full and final satisfaction of the amounts owed under the corporate guaranty based on the amount of rent appellant accepted from Barranca. Appellant responded that Barranca's prior rent payments did not reduce Green Mill's obligations under the corporate guaranty. But appellant provided Green Mill with a ledger indicating that Barranca's obligations under the second amendment were current through August 2012, including Green Mill's payment of $43,060.60. The ledger actually showed an overpayment of $5,000, which appellant reimbursed to Green Mill.

On August 29, Barranca stopped conducting business in the leased premises. The next day, appellant sent Barranca a letter notifying it that ceasing business operations in the leased premises was a "default under Article 15 of the lease." Barranca had 30 days to cure the default or else it would face termination of the lease. On September 6, appellant sent Green Mill, Hunt, and Kuhar a letter providing notice that Barranca was in default of its obligations under the lease, by virtue of its failure to pay its share of rent, property taxes, operating expenses and other charges for the month of September 2012. The letter did not mention any other payment-related defaults.

On September 7, appellant commenced an eviction action against Barranca. On November 5, appellant filed this civil action alleging breach of lease by Barranca, breach of the individual guaranty by Hunt and Kuhar, and breach of the corporate guaranty by Green Mill. Appellant moved for summary judgment, and respondents filed cross-motions for summary judgment. The district court denied appellant's motion and granted

4

Green Mill's motion for summary judgment. It found that Green Mill did not owe anything on the corporate guaranty. This appeal follows.

**D E C I S I O N**

A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. "On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504-05 (Minn. 2011).

**I.**

Appellant first argues that it "is entitled to summary judgment on its breach of contract claim against Green Mill," because Barranca defaulted on the lease from June 2011 to September 2011, which fixed Green Mill's liability to the maximum principal amount of $169,500. We disagree.

"[A] lease is a form of a contract." *Metro. Airports Comm'n v. Noble*, 763 N.W.2d 639, 645 (Minn. 2009). A guaranty is also a contract. *Loving & Assocs., Inc. v. Carothers*, 619 N.W.2d 782, 786 (Minn. App. 2000), *review denied* (Minn. Feb. 13, 2001). "When the language is clear and unambiguous, we enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010). "Unambiguous contract language must be given its plain and ordinary meaning." *Noble*, 763 N.W.2d at 645. "A contract is ambiguous if its

5

language is reasonably susceptible to more than one interpretation." *Id.* (quotation omitted).

"The construction and effect of a contract presents a question of law." *Brookfield Trade Ctr., Inc. v. Cnty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). Where no material fact dispute exists, the interpretation of a contract is an appropriate topic for summary judgment. *Id.* In considering a motion for summary judgment, courts "read contract terms in the context of the entire contract and will not construe terms so as to lead to a harsh and absurd result." *Id.*

## A. Satisfaction of the corporate guaranty

Based on the plain language of the corporate guaranty, Green Mill guaranteed payment of $169,500, which is one year of rent owed to appellant under the second amendment. The Green Mill corporate guaranty provides:

> Notwithstanding any other provision of this Guaranty to the contrary, Guarantors, collectively, shall be jointly and severally liable for (i) One Hundred Sixty-nine Thousand Five Hundred and No/100 Dollars ($169,500.00) (the "Maximum Principal"), plus (ii) any and all costs of collection and interest on the sum described in clause (i) at the per annum rate of the lesser of (a) the greater of eight percent (8%) and two percent (2%) in excess of the prime rate as reported in the Wall Street Journal and (b) the maximum rate permitted by law from and after demand in payment by Landlord**.** *Guarantors' liability hereunder shall reduce over time such that Guarantors' joint and several liability for the Maximum Principal shall be reduced by one twelfth (1/12th) for each Lease Month of the Renewal Term (as defined in the Amendment) that Tenant has not defaulted under the Lease.*

(Emphasis added.) The maximum principal amount owed was therefore reduced with each of Barranca's monthly rent payments. The corporate guaranty further states,

6

> In the event that Tenant has not defaulted under the Lease by the end of the first Lease Year of the Renewal Term, Guarantors shall have no further liability hereunder.

Appellant argues "the district court incorrectly reasoned that since [appellant] received $169,500.00 in payments, Green Mill had no further liability." We disagree. The lease agreement between appellant and Barranca states that "any failure by Tenant to pay Rent or make any other payment required to be made by Tenant hereunder within five (5) days from the date such payment is due" is a material default and breach of the lease. The district court concluded that Green Mill satisfied all of its obligations under the guaranty and granted summary judgment in its favor. It found that "Green Mill guaranteed Barranca's performance under the Lease up to the maximum amount of $169,500 . . . . It is undisputed that as of July 27, 2012, [appellant] has accepted more than $169,500 from Barranca and Green Mill and had not yet declared one default under the Lease."

Green Mill's obligations under the corporate guaranty decrease for every month that Barranca does not default, or every month Barranca pays rent. Green Mill paid appellant $43,060.60 on July 27, 2012, and informed appellant that it considered the payments to be full and final satisfaction of the amounts owed under the corporate guaranty. At that time, appellant provided a payment ledger indicating that Barranca's obligations under the second amendment were current through August 2012 and that Green Mill had overpaid in the amount of $5,000. After Green Mill requested that this amount be refunded, appellant acquiesced. This action is contrary to appellant's

7

argument that Green Mill was jointly and severally liable for the maximum principal amount of the corporate guaranty at that time.

But appellant argues that Barranca's rent payments from September 2011 to June 2012 do not reduce Green Mill's maximum principal obligation under the corporate guaranty because those payments were made after the fifth of the month, which is a material breach and default of the lease. We disagree.

"An implied right to cure exists in situations where cure is possible." *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 6 (Minn. 2010); *see also Oak Glen of Edina v. Brewington*, 642 N.W.2d 481 (Minn. App. 2002) (tenant's 17 late payments did not constitute a default where the payments were subsequently made because all defaults were cured). Here, there is no question that Barranca defaulted on several rent payments. Under the terms of the guaranty, appellant was not required to give notice of that default to Green Mill. The guaranty states:

> In the event of a default by Tenant under this Lease, LL shall endeavor to give to Guarantors written notice of such default, provided that LL's failure to give such notice to Guarantors shall not result in the release of Guarantors from its obligations hereunder or otherwise affect such default or Guarantors' obligations hereunder, and shall not result in any liability of LL to Guarantors, provide any defense to Guarantors hereunder or extend any time periods applicable hereunder, but further provided that any cure periods granted to Guarantors hereunder shall not commence to run until LL provides to Guarantors such notice. Guarantors shall have the right to cure any defaults of Tenant until the expiration of any grace or cure periods which may be provided to Tenant to cure such defaults hereunder.

8

Nevertheless, appellant received the full rent amount it was entitled to under the second amendment; it received $43,060.60 from Green Mill and $140,650.92 from Barranca. Appellant accepted several late rent payments from Barranca without objection and appellant's tenant ledger showed that it never assessed Barranca late fees when it received payments after the fifth of the month. We conclude that Barranca's defaults were subsequently cured when it made late rent payments that were accepted by appellant. These late payments reduced Green Mill's maximum obligation under the corporate guaranty. Consequently, we conclude that the district court did not err by granting summary judgment to Green Mill based on the language of the guaranty.

## B. Waiver

Appellant argues that the "district court also erroneously found that [appellant] should be estopped from enforcing Green Mill's guaranty liability arising from Barranca's defaults because [appellant] failed to 'declare' a default in response to Barranca's untimely lease payments." We disagree.

The district court found that "[b]y silently accepting late payments and failing to declare a default until September 2012, [appellant] waived its right to declare any defaults by Barranca prior to September 2012." "Waiver is a voluntary relinquishment of a known right." *Pollard v. Southdale Gardens of Edina Condo. Ass'n., Inc.*, 698 N.W.2d 449, 453 (Minn. App. 2005). "The party alleging waiver must provide evidence that the party that is alleged to have waived the right possessed both knowledge of the right in question and the intent to waive that right." *Id.*

9

The lease states, "The failure of either Landlord or Tenant to insist upon strict performance by the other of any of the covenants, conditions, and agreements of this Lease shall not be deemed a waiver of any *subsequent* breach or default in any of the covenants, conditions and agreements of this lease." (Emphasis added.) This language indicates that there is an ability to waive certain obligations under the lease; either party could waive the other party's default without jeopardizing its ability to declare a subsequent default.

Appellant accepted Barranca's rent payments for June 2011 through August 2012 without objection. Even though these payments were late, appellant did not notify Barranca or Green Mill that it considered these late payments to be a breach of the lease. It also did not charge Barranca late fees for the late rent payments. Moreover, when appellant provided Green Mill with a tenant ledger, it showed that Barranca was current in its obligations under the lease through August 2012. In fact, appellant first provided written notice that Barranca was in default for failure to pay rent on September 6, 2012. This notice only identified Barranca's "failure to pay . . . for the month of September 2012," as a default under the lease.

But appellant argues that "any defense of waiver is expressly carved out of the Green Mill Guaranty." Although appellant is correct that the corporate guaranty provides that "Guarantors shall not be released by any act or thing which might, but for this provision of this instrument, be deemed a legal or equitable discharge of a surety, or by reason of any other waiver, extension, modification, forbearance or delay or other act or omission by LL," the issue in this case is not whether any of appellant's acts constitute a

10

waiver of the guaranty obligations, but rather, whether appellant waived Barranca's defaults *under the lease*, thus reducing Green Mill's maximum obligation under the corporate guaranty. For example, the guaranty contains the following language:

> No Failure on the part of LL to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by LL of any right, remedy or power hereunder preclude any other or future exercise of any other right, remedy or power. Each and every right, remedy and power hereby granted to LL or allowed it by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by LL at any time and from time to time.

The lease does not contain similar language that limits the tenant's defense of waiver. Had the lease contained such language, appellant's argument would be more persuasive.

By accepting Barranca's late payments without objecting or declaring a breach, appellant waived its right to declare those payments in default. Under the explicit terms of the guaranty, Green Mill's liability was released by 1/12th for each lease month of the renewal term that the tenant had not defaulted under the lease, and one year had passed without a declaration of breach. Green Mill has satisfied its obligations under the Guaranty. Consequently, we conclude that the district court did not err by denying appellant's motion for summary judgment.

## II.

Appellant next argues that "there is no material issue of fact regarding [appellant's] efforts to re-let the premises—nor did Green Mill ever raise the issue below." We disagree. The district court concluded that there is a genuine issue of material fact as to whether appellant acted in a commercially reasonable manner in re-

11

letting the premises. It found that "Barranca has placed material facts in dispute as to whether [appellant's] refusal to re-let the premises . . . was commercially reasonable."

In August 2012, Hunt and his partner, Alan Peterson, organized a group of investors to take over the leased premises. On August 28, they met with representatives of Mid-America Real Estate Minnesota LLC, who was serving as the property manager and agent for appellant. They proposed an agreement where Barranca's interest in the lease would be assigned to a new tenant who would pay more rent than Barranca. Their proposed agreement also provided that any investor with an interest greater than six percent must provide a personal guarantee, similar to that required under the second amendment.

Appellant's agent indicated that it would require investors with less than six percent interest to provide a guaranty. Additionally, it provided that the spouses of interested parties must be included as guarantors. Appellant also required that the guaranties last the entire ten-year lease term. Hunt provided a counteroffer and proposed two-year diminishing guaranties from two potential investors and cross-guaranties from all other shareholders. Appellant responded by seeking two-year rolling guaranties and a letter of credit in favor of appellant for the entire lease period. The parties' negotiations ceased without reaching an agreement.

In his affidavit, Peterson stated that appellant's demands were not reasonable and indicated that he is working on a comparable project where the landlord is not requiring a guaranty. In contrast, appellant submitted affidavits stating that Hunt's investors were unable to provide appellant with adequate credit for the deal to move forward and

outlining the marketing efforts taken to re-let the premises. There are no facts in the record indicating whether appellant has been successful in re-letting the premises. Because on this record, there are material facts in dispute as to whether appellant's actions were commercially reasonable, we conclude that the district court properly denied appellant's motion for summary judgment.

**Affirmed.**