*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0969**

Stephen Ballard,
Appellant,

vs.

City of Duluth,
Defendant,

Professional Golf Management, Inc.,
Respondent.

**Filed January 20, 2015
Reversed and remanded
Connolly, Judge**

St. Louis County District Court
File No. 69DU-CV-13-2653

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota; and

Ronald R. Envall, LaCourse & Envall, P.A., Duluth, Minnesota (for appellant)

Steven E. Tomsche, Matthew Smith, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

In this appeal from the summary-judgment dismissal of his claims asserted under the Civil Damages Act, appellant argues that the district court erred by determining that his claims against respondent are barred by a release executed by appellant, a third party, and the third party's insurance company. Because we conclude that appellant's claims against respondent were not barred by the release, we reverse and remand.

## FACTS

On July 22, 2011, appellant Stephen Ballard was driving southbound on Arlington Avenue in Duluth when Robert Chesser (Chesser), who was driving northbound, crossed the center line and hit appellant's vehicle in a head-on collision. Appellant sustained personal injuries as a result of the crash. Chesser had consumed alcoholic beverages at Enger Park Golf Course Clubhouse before the crash. After the crash, Chesser provided a blood sample to law enforcement, which indicated that his alcohol concentration was .22.

At the time of the crash, Chesser had automobile liability insurance with American National General Insurance Company (ANGIC) with limits of $50,000 per person. In September 2011, appellant settled his claims against ANGIC for $50,000 subject to a Release of All Claims document (the release).[1] The release discharged Cheril Chesser and Robert Chesser from all claims for known and unknown injuries resulting from the crash. The release also states that it is a "full and final compromise adjustment and

---

[1] Appellant provided notice of the settlement to his underinsured motorist carrier, State Farm Mutual Insurance. State Farm did not substitute its draft.

2

settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident."

On July 10, 2013, appellant commenced this action against the City of Duluth and respondent Professional Golf Management Inc. (PGMI) under the Civil Damages Act.[2] Enger Park Golf Course is owned by the City of Duluth and managed by PGMI. PGMI raised an affirmative defense, claiming that the release was a general release of all claims that released all defendants and that appellant did not have a common-law tort claim relating to the over-service of alcohol. In response, appellant argued that the release did not release all defendants from future litigation under the Civil Damages Act.

On January 27, 2014, PGMI moved for summary judgment and the parties subsequently agreed to dismiss the City of Duluth from the action. On February 27, the district court held a hearing on PGMI's motion. On April 21, the district court granted PGMI's motion for summary judgment.

## D E C I S I O N

Appellant "seeks reversal of the [district] court's grant of summary judgment." "We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are

---

[2] Under the Civil Damages Act, "[a] spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by illegally selling alcoholic beverages." Minn. Stat. § 340A.801 (2014).

3

genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010).

Appellant argues that the district court erred in its application of law by ruling that appellant's Civil Damages Act claim against PGMI was "accidently released by a settlement agreement that recited only a release of the driver of the car that hit him." We agree. Historically, the release of one joint tortfeasor released all other joint tortfeasors. *See Frey v. Snelgrove*, 269 N.W.2d 918, 921 (Minn. 1978); *Luxenburg v. Can-Tex Indus.*, 257 N.W.2d 804, 807 (Minn. 1977). But in *Gronquist v. Olson*, 242 Minn. 119, 126, 64 N.W.2d 159, 164 (1954), the Minnesota Supreme Court modified the bright-line rule and concluded that when an injured party receives part of the damages from one tortfeasor, but "the receipt [is] not [] understood to be in full satisfaction of the injury," then the release does not discharge the other joint tortfeasor from liability. The *Gronquist* court explained:

> [W]here one joint tort-feasor is released, [r]egardless of what form that release may take, as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction.

*Gronquist*, 242 Minn. at 128, 64 N.W.2d at 165 (emphasis omitted). To determine whether a release will operate to release other joint tortfeasors, this court considers "(1) [t]he intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury." *Id.* "The intent of the parties and the question of actual compensation are questions of fact for the [factfinder]."

4

*Couillard v. Charles T. Miller Hosp., Inc.*, 253 Minn. 418, 428, 92 N.W.2d 96, 103 (1958).

Appellant argues that no intent is evinced on the face of the release to release everyone, including strangers to the agreement. We agree. "A settlement agreement is a contract and we review the language of the contract to determine the intent of the parties." *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010) (citations omitted). When the language is clear and unambiguous, this court will enforce the agreement as expressed in the contract. *Id.* at 582. Parol evidence may not be considered unless the contract is ambiguous. *Id.* A contract is ambiguous if it is susceptible to two or more reasonable interpretations. *Id.* "Whether a contract is ambiguous is a question of law that we review de novo." *Id.*

The district court concluded that the release precluded appellant from bringing any claim against respondent because it unambiguously precludes additional claims arising out of the accident and does not contain *Pierringer* language reserving the right to commence a legal action against PGMI.[3] The release states:

> For the sole consideration of Fifty Thousand and 00/100 Dollars ($50,000.00), the undersigned . . . hereby releases and forever discharges Cheril Chesser and Robert Chesser, his/her/their heirs, executors, administrators, agents and assigns [hereinafter releasees].

---

[3] A *Pierringer* release is language in a settlement between a plaintiff and one of several joint tortfeasors that operates to reserve a plaintiff's right to maintain a cause of action against any nonsettling defendant, but releases from liability any defendant who is party to the settlement agreement. *See, e.g.*, *Hosley v. Armstrong Cork Co.*, 383 N.W.2d 289, 292 (Minn. 1986).

It goes on to state:

> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Minnesota courts do not require specific language to create a release of claims; the agreement instead "must manifest an intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom it exists to a person against whom it might have been enforced to be a release." *Id.* When a settlement agreement does not contain a *Pierringer* release, the "release of one alleged tortfeasor will release all others *if* the settlement agreement manifests such an intent, *or if* the plaintiff received full compensation in law or in fact for damages sought against the remaining tortfeasors." *Johnson v. Brown*, 401 N.W.2d 85, 88 (Minn. App. 1987), *review denied* (Minn. Apr. 23, 1987).

The release does not state that appellant releases and discharges his claims against PGMI. The plain language of the release reflects the clear and unambiguous intent to release appellant's claims against the releasees, Cheril and Robert Chesser and their heirs, executors, administrators, agents and assignees. Although the release states that it was executed for the "express purpose of precluding forever any further or additional claims arising out of the aforesaid accident," the reference to "releasees" throughout the document demonstrates the intent to only preclude additional claims against the listed

6

parties. Thus, we conclude that the plain language of the release is unambiguous and does not manifest an intent to release PGMI. Moreover, the release does not state whether appellant was fully compensated for his injuries. Consequently, we reverse the grant of summary judgment and remand this matter for further proceedings.

**Reversed and remanded.**